[No. 7343.   Decided June 1, 1908.]

# F. L. GRIFFIN, *Appellant*, v. THE CITY OF TACOMA *et al.,* *Respondents.*[1]

MUNICIPAL CORPORATIONS—WATER SUPPLY — ACQUISITION — ORDINANCE—SUBMISSION TO VOTE—VALIDITY. An ordinance for an election· to authorize the purchase by a city of the plant of a water company need not specifically mention a source of supply held in reserve by the company, where the vote authorized the purchase of all sources of supply owned in connection with the system.

SAME. An extension of a city's water system to springs which it purchased with an existing system, and which it held for years as a reserve supply, is not a change in the plan of the city's water system which need be authorized by a vote of the people within the contemplation of Bal. Code, § 835.

MUNICIPAL CORPORATIONS — FISCAL MANAGEMENT — DIVERTING FUNDS. A city charter providing for special funds, and that all moneys collected by taxation for a special purpose shall remain in the special fund therefor, and that no fund shall be diverted from the purpose for which it was originally collected without a vote of the people, has reference only to a permanent diversion of funds, and does not prevent the temporary transfer as a loan of part of the general fund to a special fund having a permanent income under the control of the city.

SAME—INDEBTEDNESS—CONSTITUTIONAL LIMIT. The transfer of general funds to a special fund for the purpose of constructing an extension to a water system is not the incurring of a municipal indebtedness, within the constitutional inhibition, where the special fund is solvent and the general fund is not imperilled (RUDKIN and FULLERTON, JJ., dissenting).

SAME—PLEDGING WATER RECEIPTS—SUBMISSION TO VOTE. The pledging of receipts from a water system for the purpose of paying for the cost of an extension does not create a municipal indebtedness; and the same need not be authorized by a vote of the people, where the funds are used to further a general plan pursuant to a vote once taken.

SAME—POWER OF CITY—STATUTES—CONSTRUCTION. Laws 1901, p. 177, providing the details for the payment or securing of indebtedness for water works by the issuance of bonds or the pledging of water receipts, does not apply where no general indebtedness was created and the ordinance dealt only with increasing a water system by the expenditure of moneys received from the system itself.

[1]Reported in 95 Pac. 1107.

SAME—CONTRACTS—FAILURE OF OFFICER TO SIGN—EFFECT. A charter provision requiring a contract to be signed by the comptroller is directory only, and a contract is not void for want of the comptroller's signature when his duty to sign was merely clerical.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered April 18, 1908, dismissing an action for an injunction, after a trial before the court without a jury. Affirmed.

*Leo & Cass*, for appellant.

*C. M. Riddell, J. W. Quick, C. E. Dunkleberger, T. L. Stiles, F. R. Baker*, and *Frank Latcham*, for respondent city.

*Titlow & Huffer*, for respondent Savage.

HADLEY, C. J.—This action was brought by the plaintiff, as a resident citizen and taxpayer of the city of Tacoma, to enjoin that city and its codefendant Savage from proceeding with the construction of a main pipe line and other adjuncts to connect certain springs, known as "Maplewood Springs," with the water system of Tacoma as now operated. In the month of March, 1908, the city council of Tacoma duly passed an ordinance numbered 3264, authorizing such construction, and provided that the commissioner of public works in calling for bids should state that the contractor for any part of the work should agree to accept payment in cash by warrants drawn upon and payable out of the Maplewood extension fund, as created and established by ordinance. The same ordinance also created such special fund by setting aside from the gross revenues all proceeds derived from the water works system now belonging to, or which may hereafter belong to, the city at least fifty per cent thereof, exclusive of revenue for water used by the city for municipal purposes, and provided that all moneys so set aside and placed in such special fund shall be applied solely to payment for the aforesaid construction, and to other expenses necessarily incidental

to such construction. On the same day the city also passed Ordinance No. 3265, by the terms of which there is transferred from the general fund of the city to the said special fund the sum of $100,000. The transfer was made in the nature of a temporary loan from the general fund to the special fund, to be returned to the general fund under the provisions of Ordinance 3264, and also of Ordinance 3201. The latter ordinance expressly provides that when any money is by ordinance transferred from one fund of the city to another, the sum so transferred shall be by the proper officers transferred back to the original fund whenever there is sufficient amount in the fund to which the transfer was made to return the amount so transferred. The commissioner of public works advertised for bids, and the city let two contracts to the defendant Savage, under the terms of the ordinance as aforesaid. One contract was for the building of the main pipe line between Maplewood Springs and the city of Tacoma, in length from eight and one-half to nine miles, for the price of $119,387; and the other was for the construction of a force main in the city for such extension, for the price of $48,643. The contractor entered upon the prosecution of the work, and thereupon this suit was brought to enjoin its further continuance, as well as all further proceedings to accomplish the construction under said ordinances and contracts. The cause was tried by the court, and resulted in a judgment denying any injunctive relief and dismissing the action. The plaintiff has appealed.

Appellant's first contention is that the Maplewood Springs extension is an addition to the present water system of the city, and that Ordinance 3264 does not provide for submitting to the electors of the city for their ratification or rejection the question of making said addition. It must be determined whether the extension is in fact an addition to the present water system which calls for ratification by the electors. Under the terms of Ordinance No. 790 the electors of the city did hold an election in 1893 to determine, among other things,

whether the city should purchase of the Tacoma Light and Water Company its water works and all sources of water supply then owned or operated by said company as part of its water system. The vote was in favor of such purchase, and the same was effected, the regularity of the proceedings being upheld by this court in *Seymour v. Tacoma*, 6 Wash. 138, 32 Pac. 1077. The company then owned the Maplewood Springs in connection with its water system, and they belonged to and were a part of the various sources of water supply which the company had provided for its system, although it had not previously actually drawn water from these particular springs. They were held as a reserve source of supply for future use. The springs were transferred by the company to the city as a part of its water system, and the city has ever since been the owner. Through the proceedings here attacked by appellant, the city is now seeking to utilize this source of supply which it acquired and has for years owned and held as part of its source of supply to its water system.

Appellant makes the point that, inasmuch as the Maplewood Springs were not specifically mentioned in Ordinance 790, the electors therefore did not authorize their purchase by the vote of 1893. We think it was not material that they should have been specially mentioned. The electors by their vote authorized the purchase of all sources of water supply either owned or operated by the company in connection with its water system. This covered the springs in question, and when the city acquired them they became a part of its authorized water system which it may now utilize. We do not think there has been any change of plan as contemplated by the statute of 1895, Pierce's Code, § 3784 (Bal. Code, § 835). This statute has been called to our attention in a brief filed by the new city attorney of Tacoma, who assumed his official duties after this cause was submitted here. The attitude of the present city administration toward this controversy seems to differ from that of the administration which was in charge when the cause was first submitted here. The city cannot now,

however, be heard to repudiate its former position if that position is sustainable in law, but we receive the suggestion of the present city attorney as presenting points which should be considered in the determination of the controversy. We believe that the above statute cited by him is inapplicable here, for the reason that this case does not present one of a change of plan, but the city is simply adhering to its original plan of utilizing the different sources of water supply which it purchased from the Tacoma Light and Water Company by authority of a vote of the people then taken, and no vote is now required to authorize the details of furthering that plan.

The appellant's next contention is that the transfer of money from one fund of the city to another as provided by Ordinance 3265 is prohibited by the city charter. The charter provision referred to is § 96, p. 66, Revised Chapter and Ordinances of the City of Tacoma, and is as follows:

"Immediately after the *annual tax* levy the City Treasurer shall open and keep separate and distinct accounts with each *special* fund made necessary by *law*, and whenever any taxes shall be collected and paid into the treasury he shall credit each fund with its proportionate amount of such tax, and the same shall remain so credited and shall be paid out only in payments of *orders* drawn against said fund. *All funds raised by a vote of the people or by special taxation, or any other manner for a special purpose, shall be used for that purpose,* and none other. *No fund* shall be *diverted* from the purpose for which *it was originally assessed or collected or voted by the people without the proposition therefor is submitted to a vote of the people and authorized by at least a majority vote at either a special or general election.* · The Treasurer shall keep such accounts and make such other reports and perform such other duties incident to his office *as may be prescribed* by ordinance."

It will be seen that the charter provision first deals with the subject of special funds provided by law, and requires that moneys which have been collected by taxation for such special funds shall remain therein. It is not provided that moneys which have been collected for the general fund for general

municipal purposes may never, in the interest of expediting
the city's business, be temporarily transferred to a special
fund; but it is provided that no fund shall ever be diverted
from the purpose for which it was originally collected. The
word "diverted" is used in the sense of turning permanently
from its purpose, the equivalent of appropriation for some
other use. A temporary transfer from the general fund to
another fund with an assured income is not an appropriation
or diversion. With its outstanding credit against the other
fund, the assets of the general fund remain the same, and its
power to accomplish general municipal purposes has not been
decreased. The city controls both funds, and it is under the
legal obligation to see that the general fund is seasonably
reimbursed from the source of supply to the special one. Of
course the city authorities must exercise common business
sense in making such transfer. As a personal loan of magni-
tude is not ordinarily made to an individual who is insolvent,
so a city should not transfer its general fund moneys as tem-
porary loans to other funds that have not assured and certain
sources of income, the collection of which is under the control
of the city itself. The evidence shows the special fund in this
case to be such. The income from the water system is about
$20,000 a month, and the amount is increasing. The city
collects and disposes of this money and has provided for
placing one-half of the water income in the special fund. The
city owns the water system with a large amount of money in-
vested therein. The people are dependent upon the city for
their water supply which they must have for the conveniences
and necessities of life. The city fixes the water rates and
enforces collection with practically the same regularity and
universality that it levies and collects general taxes. The
source of supply to the special fund is therefore to all intents
and purposes as constant and certain as that of the general
fund. The purpose of the transfer made by the city is doubt-
less to provide immediate funds for carrying on the construc-

tion so that there may be no delay while awaiting the incoming of water taxes. The transfer under such circumstances does not imperil the general fund, and if the city in the accomplishment of the purpose to supply sufficient water to its people finds that such transfer will accelerate such needed result, there is nothing in the charter provision that prevents it.

It is next suggested that the proposed pledging of the water receipts and the transfer from the general to the special fund, will obligate the city for new indebtedness which it cannot incur by reason of the constitutional limitation upon that subject. This court has already held that the mere pledge of the water receipts as a special fund does not create a debt against the municipality within the meaning of the constitutional inhibition. *Winston v. Spokane*, 12 Wash. 524, 41 Pac. 888, *Faulkner v. Seattle*, 19 Wash. 320, 53 Pac. 365; *Dean v. Walla Walla*, 48 Wash. 75, 92 Pac. 895. We have also seen from what has already been said that the transfer from one fund to the other creates no indebtedness against the city. It is a mere temporary loan to a fund, with an assured income, whose sources of supply are entirely under the control of the city. The city's general funds are not thereby in fact reduced, inasmuch as the credit of the general fund for the temporary transfer is the equivalent of cash as a working asset, and no new debt of the city arises.

It is suggested in the brief of the present city attorney that the pledging of the water receipts should be authorized by a vote of the people. No statute is pointed out which so expressly provides, and inasmuch as their pledging does not create a municipal indebtedness it would seem that such vote is unnecessary where the funds are being used to further a general plan of utilizing water sources which have been acquired in pursuance of a vote once taken.

The brief of the present city attorney also suggests that Ordinance 3264 fails to provide for certain details required by the statute of 1901 (Laws 1901, p. 177), as found in

subdivision (b), Pierce's Code, § 3644. From an examination of the entire section we think it appears that the details enumerated in subdivisions (a) and (b) relate to procedure when actual indebtedness is created against the city. The two subdivisions are immediately preceded by the following language:

"When the system or plan has been adopted and the creation of an indebtedness by the issuance of bonds or warrants assented to as aforesaid, the said corporation shall be authorized and empowered to construct and acquire the improvements or lands contemplated, and to create an indebtedness and to issue bonds or warrants therefor, or for the condemnation thereof, as hereinafter provided, to wit:"

Subdivision (a) relates to details for the issuance of bonds evidencing a general indebtedness, and subdivision (b) authorizes the city authorities, at their option, to create a special fund from the water receipts, which fund appears to be intended as in the nature of additional security for the general indebtedness. That subdivision (b) deals with a method of securing general indebtedness we think appears not only from the general context of the whole section, but also from the specific provision in subdivision (b) that "The city or town authorities may from time to time, by ordinance, transfer to any such special fund any other available funds of said city." There can be no other "available funds" that can be so transferred, where the special fund is composed entirely of water receipts, which alone are pledged, and in such a manner as to create no indebtedness against the city. That ordinance does not therefore deal with the conditions contemplated by the statute cited, but it is confined to the subject of increasing the utility of the water system by the mere expenditure of a part of the moneys received from the operation of the water plant itself. In the absence of express legislation upon the subject, the method of such expenditure in its details may be regulated by the city authorities.

We think the suggestion by appellant that the contract is void because not countersigned by the city comptroller is

without merit. It is true there is a city charter provision to the effect that contracts entered into by the city shall be countersigned by the comptroller, but the provision is directory merely, and the failure to so countersign does not render the contract void. Unless the law clearly makes the countersigning necessary to the validity of the contract, the duty to countersign is merely ministerial, and the failure of a ministerial officer to discharge that duty does not affect the validity of the contract. The contract was authoritatively executed in behalf of the city by the commissioner of public works, and the comptroller's duty in the premises was clerical, without discretion on his part, and he could doubtless have been compelled to perform it. *State v. District Court of Ramsey County*, 32 Minn. 181, 19 N. W. 732; *Goodyear Rubber Co. v. Eureka*, 135 Cal. 613, 67 Pac. 1045.

We find no substantial ground for reversing the judgment of the lower court, and it is therefore affirmed.

MOUNT, CROW, DUNBAR, and ROOT, JJ., concur.

RUDKIN, J. (dissenting)—I concur in the majority opinion, except in so far as it upholds the right of the city to transfer or loan money from the general fund to the special water fund. I am also inclined to agree with the majority that the charter provision applies only to a permanent diversion of funds. But it does not follow from this that the city has power to shift its funds or loan its credit in the manner proposed. On the contrary its powers are limited and defined by the law of its creation, and when its authority is challenged it must be able to point to the source of its power. The burden does not rest on the challenging party to point out the restraint or prohibition. If the city may transfer or loan $100,000, it may transfer or loan the full amount necessary to construct a water or light plant, and when its credit is thus loaned its liabilities are increased to the extent of the loan. The adequacy or inadequacy of any security it may have or hold is entirely beside the question. The security

may be good in this case, but it may be bad in the next, and the existence of the power cannot depend on the wisdom or folly that may accompany its exercise. I therefore dissent.

FULLERTON, J., concurs with RUDKIN, J.