DETERMINED IN THE

# SUPREME COURT

OF

# WASHINGTON

[No. 8980.   Department Two.   December 2, 1910.]

GEORGE MILTON SAVAGE, *Appellant*, v. THE CITY OF TACOMA, *Respondent*.[1]

MUNICIPAL CORPORATIONS—CHARTERS—ORDINANCES—ENACTMENT— ORDINANCES OBLIGATING CITY FOR PAYMENTS. Under a city charter providing that no ordinance "obligating the city for the payment" of more than a specified sum shall be passed before the second regular meeting of the council after its introduction, an ordinance passed on the day of its introduction is void where it provides for contracts for a water extension, and obligates the city to create a special fund for the benefit of the contract by setting aside fifty per cent of its gross revenues from its water system and obligates the city to pay such special fund to the contractor; "obligating the city," not being limited to the creation of a general indebtedness against the city.

SAME—MANDATORY PROVISIONS. Charter provisions prescribing a definite method for the enactment of ordinances are mandatory.

JUDGMENT—RES JUDICATA—MATTERS AND PARTIES CONCLUDED. A judgment in an action, apparently a moot case to determine the validity of a contract for a city water extension, in which the validity of the preliminary ordinances was assumed, and the contractor and the city were working in harmony to sustain the contract, attacked as illegal on other grounds, is not *res judicata* in a second action by the contractor against the city for breach of the contract, defended by the city on the ground that the preliminary ordinance authorizing the contract was void; since the matters involved and the parties in the second suit were different.

[1]Reported in 112 Pac. 78.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered March 17, 1910, on the pleadings, dismissing an action for breach of contract. Affirmed.

*Marshall K. Snell,* for appellant.

*T. L. Stiles, F. R. Baker,* and *Frank M. Carnahan,* for respondent.

MORRIS, J.—Appellant brought this action to recover damages alleged to have been sustained because of the failure of the city to keep and perform its contract providing for an extension to its water system, known as the Maplewood Springs Extension. He alleged the passage of the initial ordinance, the execution of the contract thereunder, the failure of the city to perform, and finally the repeal of the ordinance. There are other allegations in the complaint, but they are not material to the discussion of the points before us. The city answered, alleging the invalidity of the initial ordinance, in that it was not passed in accordance with the provisions of the charter and conferred no authority upon the commissioner of public works to enter into the contract, and that the contract itself was invalid because of certain irregularities. The facts alleged by the city, from which it drew its conclusions of invalidity and irregularity, were all admitted, so that the only question before the court was one of law, which was passed upon on motion for judgment upon the pleadings, the court sustaining the position of the city.

Appellant, in order to escape the legal contention of the city, contends (1) that the ordinance is valid, and (2) that the opinion and judgment of this court in *Griffin v. Tacoma,* 49 Wash. 524, 95 Pac. 1107, which involved this same contract, are *res adjudicata* as to the questions now presented, and estop the city from questioning the legality of the ordinance. So that two questions are presented, was the ordinance valid; and, if not, is the city estopped by the rule of *res adjudicata.*

Section 49 of the city charter provides that:

"No ordinance obligating the city for the payment of more than one thousand dollars, or vacating any street, highway or alley, or granting any franchise or privilege shall be passed before the second regular meeting of the city council after its introduction, nor until read in full at two regular meetings of the council, and no ordinance granting a franchise shall be passed within thirty days from its introduction."

On March 4, 1908, Ordinance No. 3,264, entitled:

"An ordinance providing for the construction of a wood stave pipe line, intake, head works, pump house, all necessary work and machinery, and the acquiring of the necessary lands, right of way, easements and privileges for the purpose of bringing in water from Maplewood Springs, in Pierce county, and delivering the same to the low service reservoir in the city of Tacoma, providing for the letting of contracts therefor and for the payment thereof, and establishing a fund for such payment;"

was introduced in the city council, read a first time, and upon the same night passed to the second and third reading, and put upon its final passage. Upon its passage, it was submitted to the mayor, and was approved by him on March 5, 1908. This was in plain violation of the provisions of the charter *supra*, unless it can be held, as contended by appellant, that this ordinance does not fall within the provisions of the charter, in that it does not create a general indebtedness of the city.

In support of this contention he cites *Winston v. Spokane*, 12 Wash. 524, 41 Pac. 888; *Faulkner v. Seattle*, 19 Wash. 320, 53 Pac. 365, and *Dean v. Walla Walla*, 48 Wash. 75, 92 Pac. 895, holding that where a city enters into a contract for the doing of some public work, the cost of which is not to be charged against the city generally, but against some special fund thereby created, and the only obligation assumed by the city is payment out of such special fund, the indebtedness thus contracted is not a general municipal indebtedness within the meaning of the constitutional limitation. No ques-

tion was raised in those cases touching the validity of the ordinance or contracts initiating the fund involved, except that the constitutional limitation was or would be exceeded. In other words, the ordinance was valid if the indebtedness was legal. So that it might be here held, if a like question were presented by this record, that if the ordinance by its terms established a special fund out of which payment for this water extension should be made, the indebtedness thus created is not a general municipal indebtedness.

But such is not the primary question here. There is here no contention as to whether the indebtedness created by this ordinance is a general or special indebtedness, but rather is this ordinance one "obligating the city for the payment of more than one thousand dollars." It is admitted that the contract entered into between the city and appellant called for more than $100,000 in payments to be made by warrants drawn on the Maplewood Extension Fund, which fund is created by the ordinance "by setting aside into said fund, from the gross revenues or proceeds from the water works system now belonging to, or which may hereafter belong to, said city, at least fifty per centum (50%) thereof." It was further provided that, "the comptroller of said city is directed to draw a warrant in payment," and "the city treasurer of said city is authorized and directed to pay the same." Under the ordinance, while the city did not contract for a general municipal indebtedness, it did contract for a special indebtedness and did thereby obligate itself to the establishment of a special fund and for the payment of the money in the special fund, which was, within the meaning of the ordinance, obligating itself for the payment of money as much as if a general indebtedness had been created. The character of the fund did not disturb the obligation; it only determined the character of the obligation and the manner of its enforcement.

"The obligation assumed by a public corporation under a contract may be general and payable from funds raised by general taxation or special and payable only from moneys

raised by special assessments upon designated property. In the former case the contractor or his assignee can compel payment from the general funds at the disposal of the corporation; if the obligation for the payment is based upon a special fund he is limited on his recovery to such fund." Abbott Municipal Corporations, § 294.

The words "obligating the city" cannot be limited to the creation of a general indebtedness against the city. They have a broader and more extended meaning. The city, under the ordinance, undertook an obligation to create this special fund for the benefit of the contract by setting aside fifty per centum of its gross revenues from its water system, and it further obligated itself to pay this fund to appellant. Each of these obligations which the city undertook under this ordinance was "obligating the city for the payment," first, of fifty per centum of its gross revenues from its water system into a special fund, and second, to pay the money in this special fund to appellant. The purpose of this provision in the city charter was to insure caution, deliberation, and a full understanding of the character of the expenditure, before it could obligate itself for the payment of public funds. Such purpose would be entirely done away with if appellant's construction be given to the charter. Many if not all the ordinances initiating great public improvements, undertaken by our municipalities, provide for the creation of a special fund to pay the costs of such improvement, or create a special assessment district in which the money shall be raised by special assessment upon property benefited. It would not do to give a construction to the charter which would permit ordinances of such a character to be rushed through a common council, without opportunity for deliberation and the exercise of due care and complete understanding of the character of the act, before it should assume the dignity of a municipal enactment and bind the city, either directly or indirectly, or a portion of its citizens, to the payment of large sums of money; thus removing the safeguards upon the power of the

municipality over the property of its citizens which are sought to be created by the charter provision. The charter provision having been violated, in the enactment of this ordinance, the ordinance was void, and no authority could be based upon it for the making of the contract which is made the basis of this action.

We believe it to be the law that, where a municipal charter prescribes a definite method for the enactment of ordinances, such requirements are mandatory, and no authority is vested in the law-making body of the municipality to pass ordinances except in the manner required by the charter. Dillon, Municipal Corporations (4th ed.), § 309; Abbott, Municipal Corporations, §525; Smith, Modern Law of Municipal Corporations, § 506; *State, Gleason Pros. v. Bergen*, 33 N. J. L. 72; *Avis v. Vineland*, 55 N. J. L. 285, 26 Atl. 149; *Danville v. Shelton*, 76 Va. 325.

The ordinance being void, no authority was thereby vested in the commissioner of public works to enter into the contract, and the contract, or its breach, could not be made the basis of an action at law; unless, as urged by appellant, the judgment in the *Griffin* case is *res adjudicata* and estops the city from now raising such contention. Reference is made to that case for a determination of the questions therein submitted to the court. It will be observed that the court there held: (1) That the Maplewood Springs extension was not an addition to the water system of the city requiring special ratification by the electors of the city, but such source of water supply was included in the ratification given by the election of 1893, which gave the city the authority to purchase and acquire all sources of water supply then owned by the Tacoma Light & Power Company; (2) that the contemplated extension was not a change in the adopted plan for supplying the city with water within the purview of the act 1895, found at page 18 of the session laws of that year; (3) that a temporary transfer of funds from the general fund to a special water fund was not prohibited by the city charter; (4) that the

pledging of water receipts, and the transfer from the general
to a special water fund, did not obligate the city for a new
indebtedness which it could not incur by reason of the constitu-
tional limitation; (5) that the failure of the city comptroller
to countersign the contract did not invalidate it.

None of these holdings involved the validity of the ordi-
nance; nor was there in that case any suggestion of the in-
validity of the ordinance, nor any facts such as here are dis-
closed from which the court in that case could have held the
ordinance invalid.   Its validity was assumed by all parties,
except in so far as it was then contended that it established
a general municipal indebtedness.   The court, therefore, in
that case could not have held, as we now hold, that this ordi-
nance was void because of the violation of mandatory require-
ments of the charter, as to the manner of its passage.   No
such issue was tendered the court, nor was it possible under
the issues of that case to frame such a controversy and sub-
mit it to the court for determination.   It is almost apparent
from the record of that case that there was no real contro-
versy between the parties, but that the case was instituted as
a moot case in order to determine a favorable construction of
the contract, and thus forestall any controversy thereafter.
The suit was commenced April 10, 1908, the city and this
appellant answered April 13; reply was filed April 15, the
cause submitted to the lower court for judgment April 18,
and on April 20, the entire transcript and briefs of both
appellant and respondents, with a stipulation to submit, were
filed in this court.   To constitute a judgment an estoppel,
there must be an identity of parties and subject-matter and
the same issue depending upon the same state of facts or the
same transaction, although in relation to different rights or
different property.   But where the question in the second
suit, although similar to that in the first, growing out of a
different transaction or state of facts, is between different
parties and, although growing out of the same subject-mat-
ter, involves a different question, there is no *res adjudicata* in

the first judgment. 23 Cyc. pp. 1237, 1299. The purpose of the *Griffin* suit was to enjoin the city from proceeding with the contract, upon the ground that it was illegal, for the reasons referred to by the court in its opinion. The causes of action here pleaded are breaches of contract, and the relief sought is damages for such breach. Appellant and the city in the *Griffin* case were in friendly relations, each assisting the other in maintaining the validity of the contract. In this case they are unfriendly, and antagonistic in all their contentions and issues. Under such circumstances, there could be no *res adjudicata* in the *Griffin* judgment. *Long v. Eisenbeis,* 21 Wash. 23, 56 Pac. 933 ; *Fogg v. Hoquiam*, 23 Wash. 340, 63 Pac. 234 ; *Brier v. Traders' Nat. Bank*, 24 Wash. 695, 64 Pac. 831.

The judgment is therefore affirmed.

RUDKIN, C. J., CHADWICK, CROW, and DUNBAR, JJ., concur.