[No. 30292. Department Two. February 13, 1948.]

THE STATE OF WASHINGTON, *on the Relation of Neil D. Gray,
Appellant,* v. GENEVIEVE MARTIN, *as Clerk of the City
of Tacoma, et al., Respondents.*[1]

[1]Reported in 189 P. (2d) 637.

800

*Copeland & Tollefson*, for appellant.

*Clarence M. Boyle, Dean Barline, Horace G. Geer*, and *Robert E. Cooper*, for respondents.

*Skeel, McKelvy, Henke, Evenson & Uhlman* and *Altha P. Curry*, amici curiae.

ROBINSON, J.—The relator, a qualified elector and registered voter in the city of Tacoma, instituted action for an alternative writ of mandate, seeking thereby to compel the defendants named therein to receive, file, and thereupon canvass certain referendum petitions tendered to them by the relator and others, and, if found sufficient, thereafter to transmit them to the city council of the city of Tacoma, for such action as is prescribed by law.

The facts are few and not in dispute. On April 16, 1947, the city council of the city of Tacoma, Washington, unanimously passed ordinance No. 13082, which authorized and directed the purchase and condemnation by legal proceedings of certain real estate situated in the outskirts of Tacoma and commonly known as the Sixth avenue site, for the purpose of establishing, constructing, and operating a municipal airport and air navigation facilities. By its express terms, the ordinance declared the proposed project to be for a "public use and necessity," and further declared the existence of a public emergency, making it necessary that the ordinance take effect immediately.

On April 17, 1947, the day after its passage, the ordinance was duly published.

Within the time required by law, relator presented to the city clerk of Tacoma and her deputy a number of petitions

signed by relator and others, for a referendum of the adopted ordinance. The municipal officers refused to accept the petitions, for the reason, as set forth in their affidavit, that the ordinance contained a statement that a "public emergency" existed and therefore came within the express provisions of the city charter exempting from referendum all ordinances containing "a statement that a public emergency specified therein exists." Relator, then, by petition, commenced this action in the superior court for an alternative writ of mandate, seeking the relief stated above as against the city clerk and her deputy. Upon a hearing before the court without a jury, the petition was dismissed. Relator thereupon appealed.

The primary question presented by this action is whether or not ordinance No. 13082 is an emergency ordinance within the meaning of §§ 23 (d) and 116 of the charter of the city of Tacoma, which excepts certain ordinances from the charter's provisions relating to referendum.

The relator, Neil D. Gray, appellant herein, contends that the ordinance is not emergent within the meaning of the charter, and that it is therefore subject to referendum; the respondent city officers, on the other hand, contend that the ordinance is emergent, and therefore not subject to referendum.

The pertinent provisions of the charter here involved read as follows:

"Section 23 (d). Every ordinance shall, within ten days after its passage, be published once in the official newspaper of the city and no ordinance shall take effect or be in force until after the expiration of ten days from such publication, *subject always to the provisions of this charter concerning referendum, except ordinances containing a statement that a public emergency specified therein exists,* ordinances relating to local improvements and assessments therefor, and authorizing the issuance of local improvement bonds, ordinances adopting annual budgets, levying annual tax and making appropriations, *which shall take effect immediately after publication;* provided, that no ordinances granting a franchise, right or privilege shall become effec-

tive until after the expiration of thirty days from the date of its publication. . . .

"Sec. 116. If, prior to the date when any ordinance, *excepting ordinances containing a statement that a public emergency specified therein exists*, ordinances relating to local improvement districts and assessments therefor, and authorizing the issuance of local improvement bonds, ordinances adopting annual budgets, levying annual tax and making appropriations, shall take effect, a petition signed by qualified electors equal in number to at least ten percentum of the last preceding vote cast for all candidates for Mayor, shall be filed with the City Clerk and verified as to sufficiency of signatures, as in the case of an initiative ordinance, *such ordinance shall be suspended from taking effect, and the Council shall immediately reconsider the same, and if it does not repeal such ordinance, it shall submit it to the qualified electors for their approval or rejection at the next general municipal election*, occurring not less than forty-five days thereafter, under a ballot title prepared therefor by the corporation counsel." (Italics ours.)

The preamble and pertinent parts of ordinance No. 13082 read:

"An ordinance authorizing and directing the Corporation Counsel of the City of Tacoma to institute and prosecute an action in the Superior Court of the State of Washington for Pierce County, under the right of eminent domain, for the condemnation and acquisition in fee simple of certain tracts and parcels of land for the purpose of establishing, constructing, maintaining, equipping and operating a municipal airport and air navigation facilities in Sections 2, 3, 10 and 11, Township 20 North, Range 2 East W. M.; and declaring a public emergency and that this ordinance shall take effect immediately after publication. . . .

"Section 2. That the acquisition of said land for the purpose herein mentioned is for a public use and necessity.

"Section 3. That nothing in this ordinance shall be construed as a waiver by the City of Tacoma of its right to decline to take and pay for said property after the amount of damages has been ascertained and within the time allowed by law.

"Section 4. *That in order to provide adequate transportation facilities for the inhabitants of the City of Tacoma and for the support of the City government* it is imperative that the provisions of this ordinance become effective without

delay *and by reason thereof a public emergency is hereby declared to exist* making it necessary that this ordinance take effect immediately after publication and that the same shall take effect immediately after publication." (Italics ours.)

It has become well settled in this jurisdiction that the question of whether or not laws passed by the state legislature are emergent as exceptions to the referendum provisions of the state constitution, is a judicial question. *State ex rel. Brislawn v. Meath,* 84 Wash. 302, 147 Pac. 11; *State ex rel. Case v. Howell,* 85 Wash. 281, 147 Pac. 1162; *State ex rel. Satterthwaite v. Hinkle,* 152 Wash. 221, 277 Pac. 837; *State ex rel. Reiter v. Hinkle,* 161 Wash. 652, 297 Pac. 1071; *State ex rel. Robinson v. Reeves,* 17 Wn. (2d) 210, 135 P. (2d) 75, 146 A. L. R. 280; *State ex rel. McLeod v. Reeves,* 22 Wn. (2d) 672, 157 P. (2d) 718; *State ex rel. Kennedy v. Reeves,* 22 Wn. (2d) 677, 157 P. (2d) 721; *State ex rel. Pennock v. Reeves,* 27 Wn. (2d) 739, 179 P. (2d) 961.

Counsel have cited no cases from this jurisdiction directly in point, and we have found none, regarding the application of the above rule to city ordinances. However, we have no hesitancy in declaring that the same rule does apply to such ordinances. The same reasons which underlie the rule with reference to state legislation, as set forth in the *Brislawn* case, *supra,* apply with equal force to legislation in the form of ordinances adopted by a city council. Municipal ordinances constitute legislation enacted and adopted by a legislative body, a city council, or similar body, which derives its powers from the state constitution. Since courts have the power to decide the constitutionality of a city ordinance (*Brown v. Seattle,* 150 Wash. 203, 272 Pac. 517), they likewise must have the power to determine whether or not a certain ordinance is an emergency ordinance within the requirements of the city charter under which it is enacted and by the express provisions of which the right of referendum is reserved to the people as to such ordinances as are not emergent. See Notes (1928), 55 A. L. R. 779.

█ In our consideration of the question here involved, we proceed upon the principle that, in judicially determining whether or not a statute or ordinance is emergent, the court will give great weight to the declaration of emergency, as expressed by the legislative body. This rule, which requires a *declaration* of emergency by the legislative body, was most recently reaffirmed in *State ex rel. Pennock v. Reeves, supra,* where we said:

"We have consistently held that such legislative declaration of emergency and necessity for the enactment is conclusive and must be given effect, unless the declaration on its face is obviously false; and, in determining the truth or falsity of the legislative declaration, we will enter upon no inquiry as to the facts, but must consider the question from what appears upon the face of the act, aided by the court's judicial knowledge. *State ex rel. Hamilton v. Martin,* 173 Wash. 249, 23 P. (2d) 1. We must give to the action of the legislature and its declaration of an emergency every favorable presumption."

In the solution of the question here presented, it should be observed that the people of the city of Tacoma, through their city charter, have reserved to themselves the power of referendum over all ordinances, save only those which are emergent. As stated in the *Brislawn* case, *supra,* the electors, by this reservation, fixed a limit beyond which the legislature cannot go without doing violence to the will and voice of the people. As also stated in *State ex rel. Case v. Howell, supra,* with reference to the referendum amendment of our state constitution (constitutional amendment No. 7):

"The clear purpose of the exception to the reserved power of referendum is to preserve unimpaired the right of the legislature to exercise this police power, *but only in so far as it may be emergent.*" (Italics ours.)

In the generic *Brislawn* case, *supra,* we reaffirmed, and have since followed, the well-settled rule that, where the legislative body is acting under the authority of given specified powers, the acts of the legislative body must conform to the requirements of those powers in order to be valid and upheld. As stated:

"Where the people have put upon the legislature a limitation in the way of a specific definition of its power and an elimination of acts of a certain character, the rule is that the declaration of an emergency must conform to the constitutional requirement."

We have quoted, and shall quote, from cases which interpret the referendum and emergency provisions of the state constitution. Although those provisions differ in phraseology from those in the instant city charter, we are of the opinion that the principles laid down in the cases cited in this opinion are equally applicable to the interpretation of those parts of the city charter which are now before us.

As previously stated, the question before us is whether ordinance No. 13082 is emergent within the meaning and provisions of the city charter, so as to be exempted from the provisions concerning referendum. To be emergent, the charter requires that "the ordinance contain a statement that a public emergency specified therein exists." It will be observed that the above quotation from the city charter contains two requirements, namely: (1) that the ordinance contain *a statement* that a public emergency exists, and (2) that the public emergency be "specified therein."

The fulfillment of the first requirement is to be found in § 4 of the ordinance, which reads: ". . . and by reason thereof a public emergency is hereby declared to exist."

The second requirement is that the ordinance contain a statement of a public emergency "specified therein." Respondents contend that the following statement in § 4 of the ordinance satisfies this requirement:

"That in order to provide adequate transportation facilities for the inhabitants of the City of Tacoma and for the support of the City government . . ."

Respondents' position, according to their argument, is that the city council may designate an ordinance as emergent by merely stating therein that a *specified* public emergency exists; that the statement quoted above constitutes such a declaration, which, having been made by a legislative body, is conclusive upon the courts, since it is not obviously false on its face and there can be no facts within the judicial

knowledge of the court which would prove or tend to prove it so; and that the trial court committed no reversible error in denying appellant's petition for writ of mandate.

We cannot concur in the views of respondents, for we find no declaration of a *public emergency specified* in the ordinance.

A general definition of "emergency" is given in *State ex rel. Porter v. Superior Court,* 145 Wash. 551, 261 Pac. 90, where we stated:

"The term 'emergency' is variously defined, but the controlling idea in all the definitions is that it is something unforeseen. It is defined in 15 Cyc. 542, as:

" 'Any event or occasional combination of circumstances which calls for immediate action or remedy; pressing necessity; exigency; a sudden or unexpected happening; an unforeseen occurrence or condition.' "

The *Porter* case, *supra,* and the foregoing definition were cited and approved in *State ex rel. Hartley v. Clausen,* 150 Wash. 20, 272 Pac. 22.

The exception from referendum granted to the state legislature by the state constitution reads as follows:

" . . . except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions, . . ." Constitutional amendment No. 7.

The cases wherein this court has upheld or denied the legislative declarations of emergency are cited and reviewed in *State ex rel. Robinson v. Reeves, supra.* In those cited cases, and in others more recently decided, we have held (1) that, unless the legislative act is in fact immediately necessary, all other factors are irrelevant, and the legislation will not be upheld as emergent (*State ex rel. Kennedy v. Reeves, supra*); (2) that it is no argument to say that a referendum would promote a good cause, for the court's function is to declare the law, not to maintain or defend policies (*State ex rel. Mullen v. Howell,* 107 Wash. 167, 181 Pac. 920); (3) that an emergency does not mean expediency, convenience, or best interest (*State ex rel. Brislawn v. Meath, supra,* and *State ex rel. Reiter v. Hinkle, supra*);

(4) that "promotion of the public welfare" is not a criterion by which the court may be guided in determining whether or not an emergency exists (*State ex rel. Robinson v. Reeves, supra*); (5) that, with reference to a legislative declaration of emergency, it would "be scandalous indeed if the constitutional right of referendum could be thwarted by the mere use of false labels," and the highly beneficial character of the act does not establish "that it is necessary for the immediate public peace, health or safety, or support of the state government and its existing public institutions" (*State ex rel. Kennedy v. Reeves, supra*). In the *Kennedy* case, we stated:

"In addition to arguments that the law is highly beneficial, which may very well be true, we have been confronted with general statements culled from former decisions as to the strength of the presumptions which should be indulged in in favor of legislative declarations of emergency. With all due respect, and with the earnest desire not to seem either censorious or facetious, we feel that we must say frankly and in all seriousness that the custom of attaching emergency clauses to all sorts of bills, many of which cannot by any stretch of the imagination be regarded as actually emergent, within the meaning of the test laid down in paragraph (b) of the seventh amendment, has become so general as to make it appear, in the light of recent experience, that a number of those statements can no longer be deemed controlling. It, of course, will never be presumed that the legislature deliberately intended to infringe upon a constitutional right."

The court in that case concluded by stating that, unless it be demonstrated that the law is of the type exempted by the seventh amendment, a petition seeking a referendum of the legislative act should be granted.

In the light of these decisions, and viewing the ordinance upon its face, aided by our judicial knowledge, we are constrained to hold that no public emergency is *specified* in the ordinance, as required by the city charter in order to except it from the provisions concerning referendum.

It is contended by respondents that the ordinance is emergent on two grounds, namely: (1) in order to provide adequate transportation facilities for the inhabitants of the city of Tacoma; and (2) for the support of the city government.

As to the first ground, the ordinance contains no statement that a public emergency exists with reference to transportation facilities in Tacoma. True, the statement "to provide adequate transportation facilities" may be interpreted to imply that there is a *need* for such facilities; but the statement does not declare, nor can it be construed to mean, that the transportation facilities in Tacoma are so insufficient or inadequate as to require immediate additional facilities. Were such the case, which, in our opinion, it is not, the ordinance could still not be found to be emergent, for it provides for no immediate aids or help to the present transportation facilities of Tacoma.

While the ordinance provides that the city shall bring condemnation proceedings against several blocks of land for the purpose of constructing, equipping, and operating an airport, it at the same time preserves the right of the city to decline to take and pay for the property sought to be condemned. No money was appropriated to support this program. This court takes judicial knowledge of the fact that condemnation proceedings and the construction of an airport require, at the least, a period of several months, if not years. It is clear that such an ordinance as is before us is not emergent, for were there an emergency situation, the program provides no immediate aid.

The second ground upon which it is contended that the ordinance is emergent is that it is "for the support of the city government." What we have said in the preceding paragraphs as to the alleged first ground applies to this second ground. The ordinance contains no statement or allegation that the city is in need of immediate support or that, as to support, a public emergency exists.

We have proceeded upon the theory and belief that the words of the city charter, "a statement that a public emergency specified therein exists," mean what they say, and are not mere surplusage. The only construction that can be given to this language is that, by the use thereof, the people of Tacoma intended that, whenever the city council saw fit to declare an ordinance emergent, it must set forth in the ordinance a statement specifying not a mere conclu-

sion, nor merely the purpose of the ordinance, but an actual existing public emergency. To hold otherwise would be to nullify the power withheld by the people of the city of Tacoma when they provided for a referendum in their city charter, for it would mean a waiver of their express right to referendum whenever their city council chose to declare a certain situation an emergency.

The purpose of emergent legislation is to enable the legislative body to provide immediate action in order to prevent or remedy a condition or situation which is of such a nature that it demands immediate attention when to postpone such action would result in serious injury or damage to the people, government, or community directly concerned.

We find that ordinance No. 13082 contains no statement of a public emergency specified therein, within the intent and meaning of the city charter of the city of Tacoma.

The order of the trial court is reversed, and the writ of mandate will be granted.

MALLERY, C. J., BEALS, STEINERT, and JEFFERS, JJ., concur.