[No. 2492–3. Division Three. October 26, 1978.]

DENNIS B. SWARTOUT, *Respondent*, v. THE CITY OF
SPOKANE, *Appellant*.

*John Madden, Corporation Counsel,* and *Emmett Shearer, Assistant,* for appellant.

*Kovacevich & Algeo, Robert E. Kovacevich,* and *Richard Algeo,* for respondent.

GREEN, J.—On December 23, 1974, the city council of Spokane adopted an ordinance imposing a tax on social card games. Because of an emergency provision, the ordinance was effective immediately. Dennis Swartout, who owned and operated a cardroom, brought this action to declare the ordinance invalid. The trial court did so and ordered the City to refund the taxes paid by Mr. Swartout; however, his claim for interest and attorney's fees was denied. Both parties appeal.

Their appeals present these questions: (1) Was the emergency clause of the ordinance invalid? (2) If so, is the savings clause effective? (3) Does the City's defense of laches bar Mr. Swartout's action? (4) Was Mr. Swartout entitled to a refund of his payments? (5) If so, was he entitled to interest? and (6) Should attorney's fees have been awarded?

Mr. Swartout operated his cardroom pursuant to a license granted by the Washington State Gambling Commission.[1] The City of Spokane is authorized to impose a tax upon such activity.[2] Additionally, the City is charged

---

[1] RCW 9.46.070 provides:

"The [Gambling] Commission shall have the following powers and duties:

". . .

"(2) To authorize and issue licenses . . . to any person . . . approved by the commission meeting the requirements of this chapter and any rules and regulations adopted pursuant thereto permitting said person . . . to conduct social card games as a commercial stimulant . . ."

[2] RCW 9.46.110 states:

"The legislative authority of any county, city–county, city, or town, by local

with the duty "to investigate, and enforce and prosecute all violations" of the gambling statutes.[3] These provisions were adopted by the legislature in the gambling act of 1973. RCW 9.46.

Mr. Swartout began operating his cardroom in August 1974. Apparently aware that the City was considering a tax on the operation of cardrooms, he wrote a letter on December 18, 1974, to the city council stating that he favored "some kind of city tax on cardrooms" but that a "tax on gross receipts . . . would be a mistake." Instead, he proposed an annual license fee and offered to furnish information as to the operating revenue and expenses of a cardroom. On December 23, 1974, the city council, acting under the emergency provision of its charter, enacted ordinance No. C–22717 imposing a gross–receipts tax on the operation of cardrooms, providing, *inter alia*:

> WHEREAS, RCW 9.46.210 makes it the duty of law enforcement officials of this jurisdiction . . . to enforce the provisions of Chapter 9.46 RCW imposing a financial burden upon this city;
>
> . . .
>
> Section 2. *Persons Subject to Tax—Amount.* Effective on January 1, 1975, and thereafter, there is hereby levied upon all persons, associations and organizations conducting or operating within the corporate limits of the City of

law and ordinance . . . may provide for the taxing of any gambling activity authorized in RCW 9.46.030 . . . within its jurisdiction, the tax receipts to go to the county, city–county, city, or town so taxing the same . . ."

RCW 9.46.030(4) reads:

"The legislature hereby authorizes any person . . . to conduct social card games . . . when licensed and utilized or operated pursuant to the provisions of this chapter and rules and regulations adopted pursuant thereto."

[3]RCW 9.46.210 provides:

"It shall be the duty of and all peace officers or law enforcement officers or law enforcement agencies within this state are hereby empowered to investigate, and enforce and prosecute all violations of this chapter. Law enforcement agencies of cities and counties shall investigate and report to the commission all violations of the provisions of this chapter and of the rules of the commission found by them and shall assist the commission in any of its investigations and proceedings respecting such violations."

Spokane, the activity of social card games as hereinbefore defined, a tax in the amount of twenty percent (20%) of the gross receipts received as fees charged persons for the privilege of playing in social card games.

. . .

Section 15. *Severability*. If any provision or section of this ordinance shall be held void or unconstitutional, all other parts, provisions and sections of this ordinance not expressly so held to be void or unconstitutional shall continue in full force and effect.

Section 16. An urgency and emergency is hereby declared to exist for the passage of this ordinance, such urgency and emergency consisting of the need to provide funds urgently and immediately needed in the interests of the public health, safety, welfare and morals. Because of such urgency and emergency, this ordinance shall take effect immediately upon passage.

Immediately upon learning of the adoption of this ordinance, Mr. Swartout attempted to organize the other cardroom operators in Spokane for the purpose of challenging the validity of the ordinance. During this time he was consulting an attorney and paid the taxes due under the ordinance for the first three quarters of 1975. His effort to organize the other cardroom operators failed, and on December 18, 1975, he filed this action for declaratory and injunctive relief.

First, was the trial court correct when it declared the ordinance invalid? To answer this question, we initially turn to those provisions of the city charter governing the adoption of ordinances. Article 3[4] generally provides that

_____

[4]Article 3 of the City of Spokane charter provides, in part:

"Section 15. *Time of Passage—Appropriations—Emergency*. Every ordinance, other than emergency ordinances, shall have three public readings, not more than two of which shall be on the same day. At least three days shall elapse between the introduction and the final passage, except as otherwise provided in this Charter.
"
. . .

"An emergency ordinance . . . may be enacted without previous filing, provided it contains a statement of its urgency, and be passed by a four–fifths vote.
"
. . .

"Section 19. *Ordinances, When Effective*. Ordinances making the annual tax levy and appropriation, ordinances relating to local improvements and assess-

every ordinance, except an *emergency* ordinance, shall have three public readings, two of which may be on the same day. However, the third reading and adoption must be at least three days after the ordinance was introduced. Such ordinances become effective 30 days after their passage, unless a later date is specified. The 30–day delay in effective date of an ordinance allows the people to exercise their valuable right of referendum reserved to them in article 9, section 83 of the charter. In essence, this is a right of the people to oversee and pass upon the city council's adoption of an ordinance. It provides:

> *Referendum.* If, prior to the date when any ordinance shall take effect, a petition signed by qualified electors equal in number to 10 per centum of the entire vote cast at the last preceding general municipal election, shall be filed with the clerk, protesting against the enactment of such ordinance, it shall be suspended from taking effect. Immediately upon the filing of the petition the clerk shall do all things required by section eighty–two (82)(b) of this article. Thereupon the council shall immediately reconsider such ordinance, and, if it do[es] not entirely repeal the same, shall submit it to popular vote at the next municipal election; or, the council, in its discretion, may call a special election for that purpose; and such ordinance shall not take effect, unless a majority of the qualified electors voting thereon at such election shall vote in favor thereof.

These charter provisions are consistent with and subject to the constitution and laws of the state.[5] *State ex rel. Everett Fire Fighters Local 350 v. Johnson,* 46 Wn.2d 114, 119, 278 P.2d 662 (1955).

---

ments therefor, ordinances making appropriations, and ordinances containing a statement of their urgency shall take effect immediately upon their passage. All other ordinances enacted by the council shall take effect thirty days after the date of their passage unless a later date is fixed therein, in which event they shall take effect at such later date."

[5]Const. art. 11, § 10 states: "Any city containing a population of ten thousand inhabitants, or more, shall be permitted to frame a charter for its own government, consistent with and subject to the Constitution and laws of this state . . ."

Const. art. 2, § 1(b) reads: "The second power reserved by the people is the referendum, and it may be ordered on any act, bill, law, or any part thereof

It is readily apparent that when the city council adopted the ordinance in question and included an emergency clause making the ordinance effective immediately, it removed the people's right of referendum. The trial court determined that the emergency was not properly· declared and on that basis voided the ordinance. We affirm.

■ Whether laws passed by the state legislature, or by the city council under the powers delegated to it by the legislature, are truly emergent as exceptions to the referendum provisions of the state constitution or the city charter is a judicial question. *State ex rel. Gray v. Martin,* 29 Wn.2d 799, 803, 189 P.2d 637 (1948); *State ex rel. Humiston v. Meyers,* 61 Wn.2d 772, 777, 380 P.2d 735 (1963). The guidelines to be used in making this judicial determination are set out in *State ex rel. Hamilton v. Martin,* 173 Wash. 249, 257, 23 P.2d 1 (1933):

> We have always held to the rule that the legislative declaration of the facts constituting the emergency is conclusive, unless, giving effect to every presumption in its favor, the court can say that such legislative declaration, on its face, is obviously false and a palpable attempt at dissimulation. . . .
>
> It is also well settled, both here and elsewhere, that, in determining the truth or falsity of a legislative declaration of a fact, the court will enter upon no inquiry as to the facts, but must consider the question from what appears upon the face of the act, aided by its judicial knowledge.

*Accord, State ex rel. Pennock v. Reeves,* 27 Wn.2d 739, 743–44, 179 P.2d 961 (1947); *State ex rel. Gray v. Martin, supra* at 804; *State ex rel. Humiston v. Meyers, supra* at 778.[6]

---

passed by the legislature, except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions . . ."

[6]In *Humiston,* the court went on to define judicial knowledge, at page 779:

"Judicial notice, of which courts may take cognizance, is composed of facts capable of immediate and accurate demonstration by resort to easily accessible sources of indisputable accuracy and verifiable certainty. The court may

■ Using these guidelines, we turn to the emergency clause contained in the ordinance and examine it in light of the relevant provisions of the city charter. Article 3, section 15 of the charter provides, in part:

An emergency ordinance . . . may be enacted without previous filing, *provided it contains a statement of its urgency,* and be passed by a four–fifths vote.

(Italics ours.) Section 19 of the same article provides:

Ordinances . . . containing a *statement of their urgency* shall take effect immediately upon their passage.

(Italics ours.) The emergency clause contained in the ordinance states:

An urgency and *emergency is hereby declared to exist* for the passage of this ordinance, such urgency and *emergency consisting of the need to provide funds urgently and immediately needed* in the interests of the public health, safety, welfare and morals. Because of such urgency and emergency, this ordinance shall take effect immediately upon passage.

(Italics ours.) This statement of emergency is conclusionary in nature. Nowhere in the ordinance are any facts stated that justify the emergent nature of the conclusion. The City contends that no facts need be stated because the charter does not require it. It argues that only a "statement of its urgency" is needed and, therefore, the statement contained in the emergency clause of the ordinance is adequate. The City's interpretation of the charter provision is concisely stated in a letter from its assistant corporation counsel to Mr. Swartout, after this action was commenced:

The charter does not require an emergency to exist when an ordinance is passed to become immediately effective. It merely requires that the council declare that an emergency exists.

This position would effectively destroy the right of referendum reserved to the people by the charter and further

---

". . . resort to encyclopedias, authoritative works upon the subject, reports of committees, scientific bodies, and any source of information that is generally considered accurate and reliable . . ."

deprives them of a meaningful judicial review of the ordinance under the previously stated guidelines. *State ex rel. Hamilton v. Martin, supra.* Consequently, the City's contention must be rejected.

In *State ex rel. Kennedy v. Reeves,* 22 Wn.2d 677, 681, 157 P.2d 721 (1945), the court was confronted with a similar situation. Amendment 7 to the Washington constitution reserves the right of referendum to the people, except as to

> such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions . . .

In that case, legislation was enacted containing an emergency clause expressing, in essence, the language of the exception contained in Amendment 7. No underlying facts were contained in the legislation. The court struck down the emergency clause holding that:

> [I]t [is] too clear to require argument that the legislature cannot defeat the constitutional right, reserved by the people [the right of referendum] . . . by *merely* inserting in an act the [language contained in the exception] . . .

The court went on to state, at pages 681–82:

> Such a label may obviously be utterly and completely false. It would be scandalous indeed if the constitutional right of referendum could be thwarted by the mere use of false labels. As was said in argument, "If this can be done, the right of referendum is a dead letter in this state."

Accordingly, the court allowed a petition for referendum to be filed.

Like reasoning is required here. We hold that the "*statement* of urgency" (italics ours) required in the charter of the City of Spokane must be construed to mean a statement of the basic *facts* that create the emergency. Otherwise, the right of referendum guaranteed in the charter would be at the whim of the city council. A *mere* statement that certain legislation is immediately needed would make the ordinance effective immediately and foreclose the

right of referendum and render it illusory. We do not find this to be the intent of the framers of the charter.[7]

The City also contends that because the ordinance was a revenue measure, it was effective immediately upon its passage. This contention is based upon article 3, section 19 of the charter:

> Ordinances making the annual tax levy and appropriation, ordinances relating to local improvements and assessments therefor, ordinances making appropriations . . . shall take effect immediately upon their passage.

We do not find that the ordinance falls within any of these provisions. It is not an annual tax levy, nor a local improvement or assessment, nor an appropriation ordinance.

Thus, we find the trial court correctly invalidated the emergency clause of the ordinance.

Second, having found the emergency clause invalid, does the savings clause[8] operate to save the other provisions of the ordinance? The City contends that the remaining portions of the ordinance are valid and that their effective date should merely be delayed for the customary 30–day period. Thus, the City argues the ordinance should take effect in late January 1975, rather than on December 23, 1974, the date of its enactment. We disagree. The entire ordinance is void because it was not enacted according to the charter. Specifically, it was not given the three readings required by the charter, the third reading being at least 3 days between

---

[7]Having held the emergency provision of the ordinance invalid, the City contends it makes no difference. It presents two arguments that the right of referendum does not apply as to this ordinance. Assuming the arguments are valid, they do not benefit the City because the ordinance did not receive three public readings as required by the charter. Article 3, section 15. An improperly enacted ordinance is void. *Tennent v. Seattle,* 83 Wash. 108, 113, 145 P. 83 (1914); *Savage v. Tacoma,* 61 Wash. 1, 6, 112 P. 78 (1910); *City & County of San Francisco v. Cooper,* 13 Cal. 3d 898, 534 P.2d 403, 425, 120 Cal. Rptr. 707 (1975).

[8]Section 15 of the ordinance provides:

"If any provision or section of this ordinance shall be held void or unconstitutional, all other parts, provisions and sections of this ordinance not expressly so held to be void or unconstitutional shall continue in full force and effect."

the introduction and final passage of the ordinance. The City's reliance upon *State ex rel. Brislawn v. Meath,* 84 Wash. 302, 147 P. 11 (1915), is misplaced. *Brislawn* involved an enactment by the state legislature. There, the action was brought and the case decided prior to the effective date of the legislation. In that situation the court had the option of declaring the emergency clause invalid, delaying the effective date of the remaining provisions and still providing an opportunity for the people to exercise their right of referendum. Here, the court is not afforded this option as the effective date has long since expired.

 Third, does the City's defense of laches bar Mr. Swartout's action? The City contends that because Mr. Swartout did not initiate this proceeding until December of the following year and during that time paid taxes for three quarters, he is estopped from bringing this action under the doctrine of laches. We disagree. Generally, a void legislative act is of no effect and may be successfully attacked at any time. *See Puget Sound Alumni of Kappa Sigma, Inc. v. Seattle,* 70 Wn.2d 222, 422 P.2d 799 (1967), in which the plaintiffs successfully challenged the validity of a 1937 legislative act. The City relies on *LaVergne v. Boysen,* 82 Wn.2d 718, 513 P.2d 547 (1973), where the court held that laches barred the plaintiffs' challenge to the validity of a special levy election. *LaVergne* is distinguishable. The decision emphasizes the public's interest in the finality of elections and stresses the school board's reliance on the levy in planning their budget. These concerns are not present in the instant case. Even if *LaVergne* was applied here, laches would not bar the action. Mr. Swartout, at the time he first learned of the adoption of the ordinance, attempted to organize the cardroom operators for the purpose of bringing an action challenging the tax, and when he failed, this action was commenced. The fact that he paid the tax during this period in order to avoid the heavy penalties imposed by the ordinance[9] did not operate as an

[9]The ordinance provides:

"Section 5. *Failure to Pay Tax.* If payment of any fee or tax due under this

implied waiver of his right to challenge the act. We do not find an unreasonable delay to be involved in this case, nor do we find damage occurring to the City as a result of that delay.

■ Fourth, was Mr. Swartout entitled to a refund of the taxes paid under the void ordinance? The City contends that Mr. Swartout paid the taxes voluntarily, without compulsion or duress, and without protesting the payment. Therefore, the City reasons, Mr. Swartout is not entitled to a refund of his payments. In support of this position, the City relies upon *Pacific Fin. Corp. v. Spokane County*, 170 Wash. 101, 15 P.2d 652 (1932); *Corwin Inv. Co. v. White*, 166 Wash. 195, 6 P.2d 607 (1932). These decisions are not controlling. Each of them involves a statute which required the filing of a written protest at the time of payment if the taxpayer expected to recover a refund of his payment following a successful challenge of the tax. Here, the ordinance does not require any kind of protest. Furthermore, the ordinance imposes heavy civil and criminal penalties in the event of nonpayment. In light of these penalties, Mr. Swartout's payments cannot be considered voluntary.

---

ordinance is not received by the City Auditor on or before the last day of the month in which the tax becomes payable, there shall be added a penalty as follows:

"1–30 days late—10% of tax due, or $1.00, whichever is greater.

"31–60 days late—15% of tax due, or $2.00, whichever is greater.

"Over 60 days late—20% of tax due, or $3.00, whichever is greater.

"In addition to said penalty, the City Auditor may charge the taxpayer interest of One–Half of One Percent for each 30 days or portion thereof on the amount of the tax from the date said tax becomes due under the provisions of this ordinance.

". . .

"Section 14. *Violation—Penalties.* Any person violating or failing to comply with any of the provisions of this ordinance or any lawful rule or regulation adopted by the City Auditor pursuant thereto, upon conviction thereof, shall be punished by a fine in any sum not to exceed Three Hundred Dollars ($300.00), or by imprisonment in the City Jail for a term not exceeding Ninety (90) days, or by both such fine and imprisonment.

"Any taxpayer who engages in, or carries on, any gambling activity subject to a tax hereunder without having complied with the provisions of this ordinance shall be guilty of a violation of this ordinance for each day during which the gambling activity is carried on."

*Puget Sound Alumni of Kappa Sigma, Inc. v. Seattle, supra* at 228–29. In *Puget Sound* the court held that a payment is not voluntary when a citizen, in order to secure a legal right, complies with an illegal demand made by one holding an official position with the color of authority to enforce it. There, the city required a payment of a sum of money by each abutting owner as a condition to the vacation of a city street. This requirement was unconstitutional because it was imposed pursuant to a void legislative act. The court directed a refund to those abutting owners who had paid money within the period of the statute of limitations. The principles announced in that case are applicable here, and the trial court's order directing a refund was correct.

■ Fifth, was Mr. Swartout entitled to interest upon the refunds from the date of their payment? Mr. Swartout asserts that the trial court erred in denying interest since the moneys paid under the void ordinance were wrongfully obtained and illegally withheld by the City. *Doric Co. v. King County,* 59 Wn.2d 741, 370 P.2d 254 (1962). In *Doric,* a refund of real estate excise taxes was allowed, together with interest from the date of payment. The court summarily affirmed the granting of interest by reference to a number of prior cases in which interest was allowed. This case is dispositive of the issue here and, accordingly, the trial court erred in denying interest. *Campbell v. Saunders,* 86 Wn.2d 572, 546 P.2d 922 (1976), relied upon by the City, was a tort action and is factually distinguishable.

■ Finally, was the trial court correct in denying attorney's fees to Mr. Swartout? We find no error. Generally, attorney's fees will not be granted unless they are specifically authorized by statute. *Rocky Mountain Fire & Cas. Co. v. Rose,* 62 Wn.2d 896, 385 P.2d 45, 1 A.L.R.3d 876 (1963). There is no statute authorizing attorney's fees in this case. Mr. Swartout argues that we should apply *Weiss v. Bruno,* 83 Wn.2d 911, 914, 523 P.2d 915 (1974), contending that the court has the inherent power to award attorney's fees. We decline to extend the narrow exception

announced in *Weiss* to the instant action. The contention that Mr. Swartout has incurred expenses that will benefit a large class of people and that, therefore, he should not bear the full burden of the payment of attorney's fees is better addressed to the legislature. *See People's Nat'l Bank v. Jarvis,* 58 Wn.2d 627, 364 P.2d 436 (1961); *La Raza Unida v. Volpe,* 57 F.R.D. 94, 98 (N.D. Cal. 1972).

Accordingly, we affirm the trial court's judgment with the exception of that portion which denied Mr. Swartout interest and that denial is reversed.

MUNSON, C.J., and MCINTURFF, J., concur.

Reconsideration denied December 21, 1978.

Review denied by Supreme Court March 16, 1979.