[No. 29735-3-II. Division Two. July 13, 2004.]

SAMUEL CARRILLO, ET AL., *Respondents*, v. THE CITY OF OCEAN SHORES, *Appellant*.

*William C. Severson* (of *Garvey Schubert Barer*), for appellant.

*Thomas E. Kelly, Mark S. Filipini,* and *Patrick M. Madden* (of *Preston, Gates & Ellis, L.L.P.*), for respondents.

QUINN-BRINTNALL, C.J. — The City of Ocean Shores required owners of vacant lots within the City limits (owners) to pay water and sewer "availability charges," although their properties were not connected to the City's water and sewer systems. The owners of these vacant lots sued the

City, claiming the charges were unconstitutional property taxes and not permissible regulatory fees. The trial court granted the owners summary judgment.

The City appeals, claiming that the charges are permissible and authorized by statute; that the trial court erred by rejecting the City's affirmative defenses of laches, waiver, and estoppel; that even if correct, the trial court decision terminating the fee should apply prospectively only; and that sovereign immunity bars interest on any judgment. The City also appeals the trial court's dismissal of its unjust enrichment counterclaim against the owners. We affirm and hold that the owners are entitled to recover the "availability charges" paid after April 8, 1996,[1] plus interest.

## FACTS

The City is a non-charter code city[2] that owns and operates a combined system of sewer, water, and storm and surface water utilities (Combined Utility). The City has a water supply and distribution system (water system). The City also has a sanitary sewage collection and treatment system (sewer system) that includes a wastewater treatment plant.

Ocean Shores Municipal Code (OSMC) Section 13.12.070, first enacted in 1980 as Ordinance 300, imposes a per lot charge for each lot that could be, but is not, connected to municipal services:

**Availability charge—Water rates for lots not connected to the water system.**

A. A monthly water service charge . . . is fixed and established for each lot within the corporate limits of the city which is not connected to the water system.

---

[1] Respondents filed suit on April 8, 1999. Thus the three-year statute of limitations bars a claim for charges collected before April 8, 1996. *See* RCW 4.16.080.

[2] RCW 35A.01.020.

Clerk's Papers (CP) at 77. Currently, all lots in the City have access to a City water main or service line.

Similarly, OSMC 13.26.040, first enacted in 1993 as Ordinance 553, imposes a sewer availability charge on lots not connected to the sewer system:

**Availability charge—Sewer rates for unconnected lots with access to the system.**

A. A monthly sewer service charge ... per lot is fixed and established for each lot within the corporate limits of the city which is not connected to the sewer system but has ... service available to it.

CP at 231. Currently, nearly all properties in the City have available sewer service.[3]

The availability charges apply to undeveloped lots as well as those lots developed with septic systems.[4] For customers connected to the municipal water and sewer systems, the City collects regular periodic water charges based on meter size and water consumption and sewer charges based on volume or, for residences, a flat rate.

In the City, only about 30 percent of the approximately 12,000 lots are developed. A number of the undeveloped lots in the City are used for camping in recreational vehicles (RVs). Many of these vehicles have onboard bathroom facilities similar to those on small yachts.

The City regulates this RV camping by issuing approximately 2,400 free camping permits per year. The City does not charge a fee for the camping permits, but camping on a site is permitted for only 90 days per year. The City prohibits camping in tents on these lots because, unlike RVs, tents do not have a method of sewage disposal. Sewage generated on undeveloped lots through RV camping is

---

[3] Service is deemed "accessible" for platted lots if a public sewer is located within one block or, for unplatted lots, if the public sewer is located within 300 feet. OSMC 13.28.020A. In 1995, the City initiated the expansion of sewer service availability to all lots in the incorporated area of the City, completing the expansion in 2000.

[4] In August 2001, there were approximately 200 lots using septic systems for sewage disposal.

treated at the City's wastewater treatment plant. The City maintains an RV Dump Facility, constructed in 1994, as part of the Combined Utility, where RV users may dump their sewage. The sewage is transported to the City's wastewater treatment plant for disposal. The facility also provides free potable water. The City does not charge a fee for using the facility, and many users have indicated they would not use the facility if there were a charge. In recent years, water pollution and contamination from failing septic systems and illegal sewage dumping have created problems for the City, which are exacerbated by the City's natural geologic conditions, including sandy soil and a high water table.

The availability charges collected[5] are deposited into the Water Utility Enterprise Fund and the Sewer Utility Enterprise Fund.

The City uses the availability charges it collects to fund the expansion of the sewer system's wastewater treatment plant. The availability charges also funded the water system's expansion to provide fire protection throughout the City.[6]

On April 8, 1999, the owners filed a class action against the City, seeking to represent a class of all property owners subject to the City's sewer and water availability charges. The parties stipulated to the classification and, on July 7, 1999, the trial court certified the class under CR 23(b)(1) and (2). The "Stipulation and Order on Class Certification" allowed the City 30 days to amend its answer without leave of the court.

The owners filed a motion for summary judgment on February 5, 2001, but the trial court stayed proceedings pending the Supreme Court decision in *Samis Land Co. v. City of Soap Lake*, 143 Wn.2d 798, 23 P.3d 477 (2001), a case

---

[5] The City stopped collecting availability charges in January 2002 due to the present litigation.

[6] "The rate at which water must be supplied to a fire is so great that fire flow is the largest variable imposed on the water system." "Findings of Fact—Water System." OSMC 13.12.020(K).

dealing with the legality of standby water and sewer charges imposed by that city.

The issues before us are presented in a series of letter rulings issued by the trial court throughout 2002.

On January 14, 2002, based on the holding in *Samis*, the trial court ruled for the owners' class on the issue of liability, finding the availability charges unconstitutional.

On May 10, 2002, the trial court rejected the City's affirmative defenses and denied the City's motion to apply the decision prospectively only.

On October 8, 2002, the trial court also rejected the City's argument that sovereign immunity barred the imposition of pre- and postjudgment interest on refunds of availability charges.

On October 28, 2002, the court granted the owners' motion for summary judgment. The summary judgment order found the availability charge to be invalid and rejected the City's defenses, as well as its prospectivity and sovereign immunity arguments.

On July 29, 2002, the trial court entered an order dismissing the City's amended counterclaims, filed May 24, 2002, including its unjust enrichment claim.

The court also denied the City's untimely motion for leave to amend its answer, and it entered CR 54(b) findings on the unjust enrichment counterclaim on November 21, 2002. In a separate order, it entered CR 54(b) findings on the issues covered in the October 28 summary judgment order (liability, defenses, prospectivity, sovereign immunity).

## ISSUES PRESENTED

We first address an initial issue: Are the availability charges constitutionally invalid taxes? Finding that they are, we address the following five issues: (1) Was the trial court's summary judgment rejecting the City's defenses of laches, estoppel, and waiver improper? (2) Should the owners' class be limited to prospective relief only? (3) Does

the doctrine of sovereign immunity bar the City's payment of pre- and postjudgment interest? (4) Should the trial court have granted the City leave to amend its answer as a matter of right, to add an unjust enrichment counterclaim; or did "justice require" the trial court to have granted the City leave to amend its answer to add the counterclaim? (5) Should the owners be awarded attorney fees on appeal because the City's appeal is frivolous? We answer the first question in the affirmative as stated and the rest of the questions in the negative and affirm the trial court.

## ANALYSIS

When reviewing an order of summary judgment, we engage in the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). Like the trial court, we must consider all facts submitted and all reasonable inferences from them in the light most favorable to the nonmoving party. *Wilson*, 98 Wn.2d at 437. The nonmoving party may not rely on speculation, argumentative assertions that unresolved factual issues remain, or on having its affidavits considered at face value. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). A motion for summary judgment is proper only if, from all the evidence, reasonable persons could reach but one conclusion. *Wilson*, 98 Wn.2d at 437.

CONSTITUTIONALITY OF AVAILABILITY CHARGES

The City first contends that the trial court erred in determining as a matter of law under *Samis* that the water and sewer availability charges are constitutionally invalid taxes rather than valid regulatory fees. The City asks that we find the availability charges distinguishable from those held invalid in *Samis*.

STANDARD OF REVIEW

■ Municipal ordinances, like state statutes, are presumed constitutional, except where they implicate a suspect class or fundamental right. *Weden v. San Juan County*, 135 Wn.2d 678, 690, 958 P.2d 273 (1998). *See High Tide Seafoods v. State*, 106 Wn.2d 695, 698, 725 P.2d 411 (1986), *dismissed by* 479 U.S. 1073 (1987). If a state of facts justifying an ordinance can reasonably be conceived, such facts will be presumed to exist and the ordinance will be presumed to have been passed in conformity with those facts. *Silver Shores Mobile Home Park v. City of Everett*, 87 Wn.2d 618, 624-25, 555 P.2d 993 (1976). To rebut the presumption of constitutionality, it must be clear that the legislation cannot reasonably be construed consistently with constitutional imperatives. *Belas v. Kiga*, 135 Wn.2d 913, 920, 959 P.2d 1037 (1998); *City of Tacoma v. Luvene*, 118 Wn.2d 826, 841, 827 P.2d 1374 (1992) (citing *State v. Dixon*, 78 Wn.2d 796, 804, 479 P.2d 931 (1971)).

TAXES OR REGULATORY FEES

■ Local governments have the authority to require payment of fees that are "akin to charges for services rendered." *See Covell v. City of Seattle*, 127 Wn.2d 874, 884, 905 P.2d 324 (1995); WASH. CONST. art. XI, § 11 (police powers). But such payments must be deposited into a segregated fund directly related *either* to the provision of a service received by the entities paying the fees *or* to alleviating a burden to which the entities paying the fees contribute. *Samis*, 143 Wn.2d at 804-05 (quoting *Covell*, 127 Wn.2d at 878). *See also Arborwood Idaho, L.L.C. v. City of Kennewick*, 151 Wn.2d 359, 372-73, 89 P.3d 217, 224 (2004). These charges, which Washington courts collectively refer to as "regulatory fees," include a wide assortment of utility customer fees, utility connection fees, garbage collection fees, local storm water facility fees, user fees, permit fees, parking fees, registration fees, filing fees, and license fees. *Samis*, 143 Wn.2d at 805. These fees are not taxes and are exempt from fundamental constitutional constraints on governmental taxation authority, including the tax unifor-

mity requirement.[7] *Samis*, 143 Wn.2d at 805 (citing *Frach v. Schoettler*, 46 Wn.2d 281, 289, 280 P.2d 1038 (1955)).

■ Whether a charge imposed by a government is a tax or a regulatory fee depends on the three factors initially set forth in *Covell*.[8] *Arborwood*, 151 Wn.2d at 371 (citing *Okeson v. City of Seattle*, 150 Wn.2d 540, 552, 78 P.3d 1279 (2003)); *Samis*, 143 Wn.2d at 806.[9] The first factor we consider is whether the primary purpose of the local government is to accomplish desired public health benefits that cost money or if the purpose is to regulate. *Covell*, 127 Wn.2d at 879. If the primary purpose is to raise revenue, the charge is a tax. If the primary purpose is regulatory, the charge is a fee.[10] *Covell*, 127 Wn.2d at 879. The second factor is whether the money collected is allocated only for authorized regulatory purposes. *Covell*, 127 Wn.2d at 879. The third factor is whether there is a direct relationship (1) between the fee charged and the service received by those paying the fee, or (2) between the fee charged and the burden produced by the fee payer. *Covell*, 127 Wn.2d at 879.

[7] "All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax. . . . All real estate shall constitute one class." WASH. CONST., art. VII, § 1. *See Samis*, 143 Wn.2d at 815 ("Because the tax is set at 'sixty dollars per year per platted lot or unplatted area' without regard to each land's worth, it is clearly not levied uniformly upon the entire class of real estate as constitutionally required.").

[8] *Covell* found Seattle's street utility charge to be an invalid, nonuniform property tax, observing, "[t]he primary concern of [the] enactments is with collecting money to pay for [public] improvements rather than with public health, safety, or welfare." *Covell*, 127 Wn.2d at 883.

[9] "The analysis under the three factors is vital because there are different restrictions for imposing taxes versus imposing fees and legislative bodies may impose charges in the name of fees that are, in fact, taxes in disguise." *Arborwood*, 151 Wn.2d at 371 (citing *Okeson*, 150 Wn.2d at 552; *Samis*, 143 Wn.2d at 805).

[10] Local governments derive their police powers from Washington Constitution article XI, section 11. *Samis*, 143 Wn.2d at 804 n.8 (citing *Brown v. City of Yakima*, 116 Wn.2d 556, 559, 807 P.2d 353 (1991)). But while police powers include the authority to enact laws promoting the health and welfare of its citizens, they do not include the power to tax. *Samis*, 143 Wn.2d at 804 n.8; *Covell*, 127 Wn.2d at 878-79; *Margola Assocs. v. City of Seattle*, 121 Wn.2d 625, 634, 854 P.2d 23 (1993); *Hillis Homes, Inc. v. Snohomish County*, 97 Wn.2d 804, 809, 650 P.2d 193 (1982) (*Hillis Homes* I). While tax collection is an indispensable middle step toward accomplishment of vital public objectives, it cannot be characterized as an activity of government that itself promotes taxpayers' health or welfare. *Samis*, 143 Wn.2d at 804 n.8.

The fee charged need not be individualized according to the benefit accruing to each fee payer or the burden produced by each fee payer to avoid classification as a tax. *Covell*, 127 Wn.2d at 879.

### FIRST *COVELL* FACTOR—REGULATORY PURPOSE

On appeal, the City claims that the purpose of the availability charges is to "regulate the behavior of the plaintiffs by encouraging the proper disposal of sewage [their RVs] generate in the City and by discouraging illegal dumping of sewage." CP at 165. The City asserts:

> If the fundamental legislative impetus was to "regulate" the fee payers—**by providing them with a targeted service or alleviating a burden to which they contribute**—that would suggest that the charge was an incidental tool of regulation rather than a tax in disguise.

Br. of Appellant at 15 (citing *Samis*, 143 Wn.2d at 807). The City thus emphasizes the propriety of regulatory fees to alleviate a burden.

The City cites *Teter v. Clark County*, 104 Wn.2d 227, 704 P.2d 1171 (1985), where storm water utility charges used to construct surface water control facilities were found to be regulatory fees, enacted under the county's police powers. 104 Wn.2d at 234. But in *Teter*, the property owners challenging the charges were found to have contributed to the burden of water runoff and, therefore, the fees were reasonably related to the landowners' contribution to the burden. 104 Wn.2d at 237-38.

Here, the City never established how it used the availability fee to "regulate" unconnected property owners, particularly those with functioning septic systems.[11] *Compare*

---

[11] In *Hillis Homes, Inc. v. Public Utility District No. 1 of Snohomish County*, 105 Wn.2d 288, 299-300, 714 P.2d 1163 (1986) (*Hillis Homes* II), a case decided before the development of the three-part *Covell* test, the court found a water system connection charge to be valid as part of a plan to " 'regulate and control the use [and] distribution' of water" (quoting RCW 54.16.030). This seems a far cry from the stricter *Covell* and *Samis* concepts of regulation, but here the City does not even meet this looser standard of regulation. And the *Samis* court expressly rejected the concept of an "overall regulatory design for 'Public Services' " as meeting the first *Covell* factor. 143 Wn.2d at 809.

*Thurston County Rental Owners Ass'n v. Thurston County*, 85 Wn. App. 171, 931 P.2d 208 (holding that fees for permits relating to on-site septic tank systems were valid regulatory fees, and thus county could impose them under its general police powers), *review denied*, 132 Wn.2d 1010 (1997). In its brief in opposition to the owners' summary judgment motion, the City cites to the declarations submitted by various City officials. But the declarations do not support the City's regulatory purpose argument—they defeat it. The declaration of the City's finance director states that the primary purpose of the availability charges is "to fund water and sewer capital facilities." CP at 121.

The City next asserts that the fee is for a "targeted service." Br. of Appellant at 17 (citing *Samis*, 143 Wn.2d at 807). Where a charge is related to a direct benefit or service, it is generally not considered a tax or assessment. *See King County Fire Prot. Dist. No. 16 v. Hous. Auth.*, 123 Wn.2d 819, 833, 872 P.2d 516 (1994) (holding that an ambulance charge assessed by the fire district on the housing authority was not a tax because the charge did not raise money for broad-based public improvements but, instead, provided the fee payers with an individualized emergency service). But in *Arborwood*, our Supreme Court recently rejected an argument that an ambulance charge imposed on each household, business, and industry was a valid regulatory fee. The court distinguished the service provided from that in *Fire Protection District*, where the benefit charges at issue were based on such factors as insurance savings, water source, and distance from fire service facilities. *Arborwood*, 151 Wn.2d at 372. Moreover, under the *Fire Protection District* statute, the charges could be individually determined and the amount charged could be challenged by individual property owners. *See Fire Prot. Dist.*, 123 Wn.2d at 834; former RCW 52.18.010 (1990). Like the availability charges before us, the *Arborwood* charge was a flat $2.60 per month, regardless of the entity's distance from a hospital or the frequency of ambulance calls. 151 Wn.2d at 372.

The City argues that the class of owners uses the City's water (fire protection) and sewage (RV facility, water treatment) services. But it is clear from the record that the primary purpose of the availability charge here is to generate revenue to fund the City's Combined Utility. *See Arborwood*, 151 Wn.2d at 372; *Samis*, 143 Wn.2d at 810. *Potential* use of the services by some members of the class is not synonymous with providing a "targeted service" to the class of unconnected property owners. *See Arborwood*, 151 Wn.2d at 371. The City's availability charge is not targeted for a regulatory purpose.

SECOND *COVELL* FACTOR—SEGREGATION OF FEE

The second *Covell* factor requires that the regulatory fees be segregated and used *only* to regulate the entity or activity being assessed. *Samis*, 143 Wn.2d at 810 (citing *Covell*, 127 Wn.2d at 885-86).

The City asserts that the availability fee is more closely tied to the water and sewer system than in *Samis* but, again, the record does not support the City's claim. The City does not dispute that only unconnected owners pay the charges, but the funds raised are not segregated and used only for services targeted to those owners required to pay the fee. Nor has the City articulated how the assessed property owners are regulated by these availability charges. Thus, the second factor points to the charges being taxes, not fees.

THIRD *COVELL* FACTOR—DIRECT RELATIONSHIP

The final test for differentiating fees from taxes is whether there is a "direct relationship" between the fee charged and *either* a service received by the fee payers *or* a burden to which they contribute. *Arborwood*, 151 Wn.2d at 372-73 (citing *Samis*, 143 Wn.2d at 806; *Covell*, 127 Wn.2d at 879; *Teter*, 104 Wn.2d at 232). As long as a "direct relationship" is present, " 'only a *practical* basis for the rates is required, not mathematical precision.' " *Samis*, 143 Wn.2d at 811 (quoting *Teter*, 104 Wn.2d at 238).

In *Samis*, the court examined the relationship between the charge and the burden or benefit in various cases:

[I]n *Morse v. Wise*, [37 Wn.2d 806, 226 P.2d 214 (1951)], we held that . . . Chelan had police power authority to force *current* sewer customers to pay for improvements to its sewer system, even though *new* customers were the primary beneficiaries of the improvements. In *Teter* [*v. Clark County*, 104 Wn.2d 227], we ruled that charges collected from lands shown to be contributing to an increase in surface water runoff were "tools of regulation" rather than taxes because, even though no *service* was being provided to every fee payer, the rate schedule [bore] a reasonable [albeit imprecise] relation to the contribution of each lot to the *shared burden* being alleviated by the storm and surface water control facilities. In *Thurston County Rental Owners Ass'n v. Thurston County*, [85 Wn. App. 171], the court deemed a septic system permit fee charged to finance efforts to reduce ground and surface water contamination in the area to be a valid "regulatory fee" since it was reasonably related to the pollution burden created by new septic systems. In *Smith v. Spokane County*, [89 Wn. App. 340, 948 P.2d 1301 (1997)], additional fees were imposed on water and sewer *customers* in an Aquifer Protection Area to pay for the protection, preservation and rehabilitation of their subterranean water source. While the rates in *Smith* were fixed and unrelated to the "amount of water used, or whether the household is served by a septic system or a municipal sewer line," the court held that [e]nsuring a clean source of drinking water provides a direct benefit to *everyone who receives water* from the aquifer. In each of these cases, it was clear that . . . a direct relationship existed between the charge and *either* a service received *or* a burden to which the payers were contributing.

*Samis*, 143 Wn.2d at 811-13 (footnotes omitted). The *Samis* court determined that the landowners challenging the standby charge did not have *any* relationship to the city's water service, and the lands at issue were uninhabited properties that generated no sewage of any kind and did not otherwise burden the city's sewer or water systems.

Here, in contrast, the City has made some showing that some undeveloped lots may burden the City's water and sewer systems. But the City has not demonstrated how the potential, and likely erratic, burden of some owners of

undeveloped or unconnected land relates to the flat monthly charge imposed on every unconnected owner regardless of actual use of the services. Therefore, like Kennewick's ambulance charge, the City's availability charge does not satisfy *Covell*'s third requirement that there be a demonstrated direct relationship between the fee and the benefit received. Thus, analysis of the third *Covell* factor also indicates that the availability charge is a tax and not a regulatory fee.

█ The burden of demonstrating unconstitutionality of an ordinance is on its challengers—here, the owners. If facts justifying an ordinance can reasonably be conceived to exist, we will presume the facts exist and the ordinance will be presumed to have been passed in conformity with those facts. *See Silver Shores Mobile Home Park v. City of Everett*, 87 Wn.2d 618, 624, 555 P.2d 993 (1976).

█ But because the *Covell* factor analysis overwhelmingly establishes that the availability charge is a non-uniform tax, the owners have satisfied their burden of proving that the charge is constitutionally invalid. We agree with and affirm the trial court's decision that the availability charge is an impermissible tax.

STATUTORY AUTHORIZATION

█ The owners also urge this court to find that the City lacks statutory authority to impose the availability charges. But the trial court never ruled on this issue, choosing instead to address the constitutionality of the ordinance by applying the *Samis Land Co. v. City of Soap Lake*, 143 Wn.2d 798, 23 P.3d 477 (2001), decision.

Because we agree with the owners and the trial court that *Covell* and *Samis* (and now *Arborwood Idaho, L.L.C. v. City of Kennewick*, 151 Wn.2d 359, 89 P.3d 217 (2004)) reveal that the availability charge was an impermissible tax and summary judgment is appropriate, we need not consider the owners' statutory claim. *See Okeson v. City of Seattle*, 150 Wn.2d 540, 557, 78 P.3d 1279 (2003) ("Because we rule that the ordinance imposed an unconstitutional tax,

the statutory issues are moot."); *Samis*, 143 Wn.2d at 815 n.60 (Because the record makes it clear that the ordinance cannot be construed in a manner that comports with constitutional imperatives "[w]e . . . need not decide whether Soap Lake was statutorily authorized to impose this tax."). *See also Ronald Sewer Dist. v. Brill*, 28 Wn. App. 176, 180, 622 P.2d 393 (1980) (appellate court may decline to reach issue where not considered by trial court when granting summary judgment) (citing *Bernal v. Am. Honda Motor Co.*, 87 Wn.2d 406, 553 P.2d 107 (1976)).

CITY'S AFFIRMATIVE DEFENSES

The City contends that the trial court erred in granting summary judgment for the property owners on its asserted defenses of laches, waiver, and estoppel. We disagree.

LACHES

 Laches is an implied waiver arising from knowledge of existing conditions and acquiescence in them. *Lopp v. Peninsula Sch. Dist. No. 401*, 90 Wn.2d 754, 759, 585 P.2d 801 (1978). The elements of laches are: first, knowledge or reasonable opportunity to discover on the part of a potential plaintiff that he has a cause of action against a defendant; second, an unreasonable delay by the plaintiff in commencing that cause of action; and third, damage to the defendant resulting from the unreasonable delay. *Lopp*, 90 Wn.2d at 759. Damage to a defendant can arise either from acquiescence in the act or from a change of conditions. *Lopp*, 90 Wn.2d at 759-60. None of these elements alone raises the defense of laches. *Lopp*, 90 Wn.2d at 759. In *Lopp*, the court held that the suit was barred by laches where a plaintiff delayed one month in challenging a special election for issuance of bonds. 90 Wn.2d at 756.

 The City argues that the owners had knowledge of the cause of action (because a "prominent [class member] voted in favor of the charges as a City Council member"); the owners waited an unreasonable time to bring their claim (19 years for the sewer charge and 6 years for the water charge); and (3) the City has suffered damage as a

result (the charges were used to fund facilities for the benefit of the owners). Br. of Appellant at 21. But *Lopp* and *La Vergne v. Boysen*, 82 Wn.2d 718, 513 P.2d 547 (1973), on which the City relies, involved challenges to special elections and do not further our inquiry here. *See Swartout v. City of Spokane*, 21 Wn. App. 665, 674, 586 P.2d 135 (1978), *review denied*, 91 Wn.2d 1023 (1979). Moreover, the correct time limit for seeking a refund of an illegal tax or fee is determined by RCW 4.16.080.[12] Under that statute, suits for refund of illegal taxes " 'are actions arising out of implied liabilities to repay money unlawfully received.' " *Henderson Homes, Inc. v. City of Bothell*, 124 Wn.2d 240, 248, 877 P.2d 176 (1994) (quoting *Adams County v. Ritzville State Bank*, 154 Wash. 140, 144, 281 P. 332 (1929)). The statute of limitations for such claims is three years. RCW 4.16.080(3).

■ Absent highly unusual circumstances, we will not apply the doctrine of laches to bar an action short of the applicable statute of limitations. *In re Marriage of Hunter*, 52 Wn. App. 265, 270, 758 P.2d 1019 (1988), *review denied*, 112 Wn.2d 1006 (1989); *Kelso Educ. Ass'n v. Kelso Sch. Dist. No. 453*, 48 Wn. App. 743, 750, 740 P.2d 889, *review denied*, 109 Wn.2d 1011 (1987); *Brost v. L.A.N.D., Inc.*, 37 Wn. App. 372, 375, 680 P.2d 453 (1984). Here, the owners have limited their claims for refund to the period within the three-year statute of limitations (from April 1996 onward). Moreover, the City does not present any highly unusual circumstances distinguishing the City's availability charge from any other action to recover taxes wrongfully paid that would create a genuine issue of material fact making summary judgment on laches inappropriate.

ESTOPPEL

■ Applying the doctrine of equitable estoppel requires a showing that the party to be estopped (1) made an

---

[12] RCW 4.16.080 reads:

The following actions shall be commenced within three years:

. . . .

(3) . . . an action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument.

admission, statement, or act that was inconsistent with his later claim; (2) that the other party relied on it; and (3) that the other party would suffer injury if the party to be estopped were allowed to contradict or repudiate his earlier admission, statement, or act. *Henderson Homes*, 124 Wn.2d at 248-49; *Pub. Util. Dist. No. 1 of Klickitat County v. Walbrook Ins. Co.*, 115 Wn.2d 339, 347, 797 P.2d 504 (1990); *Wendle v. Farrow*, 102 Wn.2d 380, 382-83, 686 P.2d 480 (1984). Equitable estoppel is not favored, and the party asserting estoppel must prove each of its elements by clear, cogent, and convincing evidence. *Chem. Bank v. Wash. Pub. Power Supply Sys.*, 102 Wn.2d 874, 905, 691 P.2d 524 (1984), *cert. denied*, 471 U.S. 1065 (1985) (*Chemical Bank II*).

"Payment under protest" of a tax is not required for a refund of an illegal tax, unless required by statute. *See Hillis Homes, Inc. v. Snohomish County*, 97 Wn.2d 804, 811, 650 P.2d 193 (1982) (*Hillis Homes* I). *See also Hansen Baking Co. v. City of Seattle*, 48 Wn.2d 737, 745, 296 P.2d 670 (1956) ("In the absence of a legislative requirement that a written protest be filed, none is necessary in order to preserve the taxpayer's position in connection with the payment of a state excise tax."); *Byram v. Thurston County*, 141 Wash. 28, 41, 251 P. 103, 252 P. 943 (1926) ("No particular form of protest is required by statute. When the statute prescribes no specific conditions in making protests, it would seem that the courts can require none."); *Swartout*, 21 Wn. App. 665 (finding challenged city ordinance, imposing tax on social card games, does not require any protest). *Compare* RCW 84.68.020 (requiring that property taxes be paid under protest to bring a claim later); *Longview Fibre Co. v. Cowlitz County*, 55 Wn. App. 309, 777 P.2d 556 (1989) (RCW 84.68.020 required entity to pay each installment of taxes under protest to be entitled to refund), *aff'd*, 114 Wn.2d 691, 790 P.2d 149 (1990).

Here, the statute does not require payment to be made under protest to preserve objection, and the owners' payment of the availability charge was not inconsistent

with their current claim that the charge itself is invalid. Therefore, the City cannot point to an "admission, statement, or act" that is inconsistent with the owners' claim that the City lacked authority to impose the blanket availability charges, and summary judgment on this issue was appropriate.

WAIVER

■■ ■■ Waiver is the intentional and voluntary relinquishment of a known right; it may be either express or implied. *Jones v. Best*, 134 Wn.2d 232, 241, 950 P.2d 1 (1998). For implied waiver, there must be unequivocal acts or conduct evidencing an intent to waive; intent will not be inferred from doubtful or ambiguous factors. *Wagner v. Wagner*, 95 Wn.2d 94, 102, 621 P.2d 1279 (1980). But here, the City has not pointed to any activity by the owners that unambiguously demonstrates waiver.

Summary judgment rejecting all of the City's affirmative defenses was therefore appropriate.

PROSPECTIVITY

The City also asks that the trial court's decision finding the charges unconstitutional be applied prospectively only because it is based on *Samis*, which, the City asserts, overruled past precedent and established a new rule. In support, it cites *National Can Corp. v. Department of Revenue*, 109 Wn.2d 878, 881, 749 P.2d 1286, *cert. denied*, 486 U.S. 1040 (1988) (*National Can II*), *holding limited by Digital Equipment Corp. v. Department of Revenue*, 129 Wn.2d 177, 916 P.2d 933 (1996), *cert. denied*, 520 U.S. 1273 (1997).

In *National Can Corp. v. Department of Revenue*, 105 Wn.2d 327, 715 P.2d 128, 732 P.2d 134 (1986) (*National Can I*), commercial enterprises claimed that Washington's multiple activities exemption to the business and occupation tax violated the commerce clause, United States Constitution article I, section 8. The United States Supreme Court agreed. *See Tyler Pipe Indus., Inc. v. Dep't of Revenue*, 483 U.S. 232, 107 S. Ct. 2810, 97 L. Ed. 2d 199 (1987). On

remand, in *National Can* II, 109 Wn.2d at 880-81, our Supreme Court held that because state case law and statutes did not mandate refunds of the taxes, it must engage in a prospectivity analysis under *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S. Ct. 349, 30 L. Ed. 2d 296 (1971).

 *Chevron Oil* set out three factors to be considered in deciding whether to give retroactive or prospective effect to a new rule in a federal civil case:

> Courts must (1) determine whether the decision establishes a new principle of law either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect and whether retrospective operation will further or retard its operation; and (3) weigh the inequity imposed by retroactive application.

*Nat'l Can* II, 109 Wn.2d at 881 (citing *Chevron Oil*, 404 U.S. at 106-07). The threshold factor necessary for prospective application is a finding that a court's decision established a new principle of law, overruling past precedent on which litigants may have relied. *Nat'l Can* II, 109 Wn.2d at 882.

However, the *National Can* II holding was later limited by *Digital Equipment*. In *Digital Equipment*, the court held that an opinion announcing a new rule follows the normal rule of retroactive application—it applies to the litigants before the court.[13] *See* 129 Wn.2d at 187 (citing *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97-98, 113 S. Ct. 2510, 125 L. Ed. 2d 74 (1993); *Beam Distilling Co. v. Georgia*, 501 U.S. 529, 539, 111 S. Ct. 2439, 115 L. Ed. 2d 481 (1991)). We note that *Digital Equipment* relied on United States Supreme Court cases decided after *Chevron Oil*. Moreover, *Digital Equipment* noted that when a court applies a rule of federal law to the parties before it, that rule is the controlling interpretation and must be given full retroactive effect

---

[13] *Samis Land Co. v. City of Soap Lake*, 143 Wn.2d 798, 23 P.3d 477 (2001), which the City argues established a new rule, did not address the issue of whether the decision should be prospectively applied.

in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate the announcement of the rule. *Digital Equip.*, 129 Wn.2d at 186. *See also Robinson v. City of Seattle*, 119 Wn.2d 34, 77, 830 P.2d 318 (abolishing selective prospectivity in Washington and stating that "under *Beam Distilling*[, 501 U.S. 529], *retroactive application of a principle in a case announcing a new rule precludes prospective application of the rule in any subsequently raised suit based upon the new rule.* Such [selective prospectivity] would be unequal and unmindful of stare decisis as it treats similarly situated litigants unequally"), *cert. denied*, 506 U.S. 1028 (1992).

But we need not address whether the prospectivity rule set forth in *Chevron Oil* and *National Can* II has been weakened or reversed. The trial court correctly ruled that *Samis* does not establish a new principle of law and, therefore, the City did not meet the threshold factor for prospective application. The applicable standards for deciding whether the City's availability charge is a permissible regulatory fee or an impermissible tax were set out in 1995 in *Covell v. City of Seattle*, 127 Wn.2d 874, 905 P.2d 324 (1995). *Arborwood Idaho, L.L.C. v. City of Kennewick*, 151 Wn.2d 359, 371, 89 P.3d 217 (2004). The property owners correctly assert that the trial court's decision, and the decisions in *Samis* (and now *Arborwood*) were not pronouncements of new law but foreshadowed by earlier precedent. The City relies on *Ronald Sewer District v. Brill*, 28 Wn. App. 176, 180, 622 P.2d 393 (1980), which involved a sewer availability charge enacted under former RCW 56.16.090 and .100 (1974), for the proposition that *Samis* overruled past precedent. But that case, which predates *Covell*, involved a statutory challenge and did not address whether the charge was a constitutionally invalid property tax. Moreover, *Covell*, 127 Wn.2d 874, and *Hillis Homes* I, 97 Wn.2d 804, foreshadowed the result in *Samis* and *Arborwood*. In any event, this case was pending when *Samis* and *Arborwood* were filed. Thus, *Samis* and *Arborwood* control our analysis and dictate the result here.

EFFECT OF SOVEREIGN IMMUNITY DOCTRINE ON AWARD OF INTEREST
ON JUDGMENT

The City also contends that its sovereign immunity bars the trial court's imposition of pre- and postjudgment interest.

■ The general rule is that the " 'state cannot, without its consent, be held to interest on its debts.' " *Our Lady of Lourdes Hosp. v. Franklin County*, 120 Wn.2d 439, 455-56, 842 P.2d 956 (1993) (quoting *Architectural Woods, Inc. v. State*, 92 Wn.2d 521, 524, 598 P.2d 1372 (1979)). The State may waive sovereign immunity by contract in an individual situation. *Bond v. State*, 70 Wn.2d 746, 748, 425 P.2d 10 (1967); *State v. Turner*, 114 Wn. App. 653, 660, 59 P.3d 711 (2002). But only the legislature can adopt a blanket waiver. *Architectural Woods*, 92 Wn.2d at 526.

■ ■ Municipal corporations, as creatures of the state, derive their authority and powers from the state's legislative body. *Campbell v. Saunders*, 86 Wn.2d 572, 574-75, 546 P.2d 922 (1976) (citing *Campbell v. Bellevue*, 85 Wn.2d 1, 14, 530 P.2d 234 (1975); *Othello v. Harder*, 46 Wn.2d 747, 752, 284 P.2d 1099 (1955); Philip A. Trautman, *Legislative Control of Municipal Corporations in Washington*, 38 WASH. L. REV. 743, 744 (1963)). In explaining the distinction between a municipal corporation's governmental and proprietary functions, our Supreme Court stated in *Kelso v. City of Tacoma*, 63 Wn.2d 913, 390 P.2d 2 (1964):

> " 'Municipal corporations enjoy their immunity from liability for torts only in so far as they partake of the state's immunity, and only in the exercise of those governmental powers and duties imposed upon them as representing the state. In the exercise of those administrative powers conferred upon, or permitted to, them *solely for their own benefit in their corporate capacity, whether performed for gain or not*, and whether of the nature of a business enterprise or not, they are neither sovereign nor immune. They are only sovereign and only immune in so far as they represent the state. *They have no sovereignty of their own*, they are in no sense sovereign *per se.*' "

63 Wn.2d at 916-17 (quoting *Hutton v. Martin*, 41 Wn.2d 780, 784, 252 P.2d 581 (1953)).[14]

In making the argument that it is immune from payment of interest on the judgment, the City relies heavily on *Architectural Woods*, 92 Wn.2d 521, and *Our Lady of Lourdes*, 120 Wn.2d 439. In *Architectural Woods*, the court "reinstate[d] the rule . . . that the State without its consent cannot be held to interest on its debts," 92 Wn.2d at 526, but held that such consent could be manifested expressly by statute or found by implication in situations where state agencies were authorized to enter into contracts. 92 Wn.2d at 529-30. *Architectural Woods* found that the state agency in that case had impliedly waived sovereign immunity.

In *Our Lady of Lourdes*, the court stated broadly, "Counties, like cities, are political subdivisions of the State to which the rule [of sovereign immunity] applies." 120 Wn.2d at 456. The *Lourdes* court then held that under a statute, the county must pay the hospital for the cost of hospitalizing inmates—but that, based on the general rule, the county was not liable for postjudgment interest. 120 Wn.2d at 456.

 But here the City has not shown that it was engaged in an activity on behalf of the state, as required by *Kelso* (and was the case in *Our Lady of Lourdes*[15]). Moreover, long-standing case law supports the trial court's interest ruling. *Doric Co. v. King County*, 59 Wn.2d 741, 370 P.2d 254 (1962), an illegal-tax refund case, summarily affirmed the grant of interest on the judgment. *Doric* referenced a number of prior cases in which interest was

---

[14] *But see Silvernail v. Pierce County*, 80 Wn.2d 173, 492 P.2d 1024 (1972) (holding that, following enactment of 1967 statute extending State's 1961 abandonment of sovereign immunity to municipal corporations, court may not require county to pay interest on tort judgment because 1967 statute must be considered in pari materia with 1961 statute, which was held in *Fosbre v. State*, 76 Wn.2d 255, 456 P.2d 335 (1969), to not subject the State to liability for interest on damage awards).

[15] At issue in that case was "the extent to which the [state] Department of Social and Health Services . . . must reimburse Franklin County . . . for the costs of inpatient medical care of two county jail inmates hospitalized." *Our Lady of Lourdes*, 120 Wn.2d at 441.

allowed, including *Great Northern Railway Co. v. Stevens County*, 108 Wash. 238, 244, 183 P. 65 (1919). *See also Lone Star Cement Corp. v. City of Seattle*, 71 Wn.2d 564, 572, 429 P.2d 909 (1967) (citing *Doric* for this proposition); *Swartout v. City of Spokane*, 21 Wn. App. 665, 676, 586 P.2d 135 (1978) (also citing *Doric* for this proposition), *review denied*, 91 Wn.2d 1023 (1979). Here, sovereign immunity does not excuse the City from pre- and postjudgment interest for its collection of an illegal tax.

AMENDMENT OF ANSWER AS OF RIGHT/PERMISSIVE AMENDMENT

Finally, the City contends that it should have been permitted to file its unjust enrichment counterclaim as of right, based on CR 15(a), which allows a party to amend its pleading once as a matter of right before a responsive pleading is filed. Alternatively, it contends that the trial court abused its discretion in refusing to permit amendment under CR 15(a). CR 15(a) also permits amendment by leave of court, and admonishes that such leave "shall be freely given when justice so requires." The property owners contend that, in either case, the unjust enrichment claim fails to state a cognizable claim.[16]

Dismissal for failure to state a claim is reviewed de novo and is appropriate only if " 'it appears beyond a reasonable doubt that no facts exist that would justify recovery.' " *State ex rel. Evergreen Freedom Found. v. Wash. Educ. Ass'n*, 140 Wn.2d 615, 629, 999 P.2d 602 (2000) (quoting *Reid v. Pierce County*, 136 Wn.2d 195, 201, 961 P.2d 333 (1998)). In evaluating the validity of a claim in this context, we accept as true the allegations in a plaintiff's complaint and any reasonable inferences from it therein. *Reid*, 136 Wn.2d at 201.

We review the trial court's decision to grant leave to amend the pleadings for an abuse of discretion. *Wilson v. Horsley*, 137 Wn.2d 500, 505, 974 P.2d 316 (1999). A trial court abuses its discretion if its discretionary decision is

---

[16] The property owners also make other arguments but assert that each ground they raise would alone be sufficient to defeat the City's counterclaims. We focus on the first ground, which we agree is sufficient.

manifestly unreasonable, or the trial court based its decision on untenable grounds, or made its decision for untenable reasons. *Wilson*, 137 Wn.2d at 505; *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

■ The City cites no legal authority for the proposition that a City has an unjust enrichment claim against one who uses the services offered free of charge by the City or whose property value is increased by the City's actions. *Compare Bellevue Assocs. v. City of Bellevue*, 108 Wn.2d 671, 741 P.2d 993 (1987) (discussing special assessments). We will not consider arguments for which a party has not cited authority. *State v. Dennison*, 115 Wn.2d 609, 629, 801 P.2d 193 (1990). Thus, the trial court did not err in refusing to permit the City to add an unjust enrichment counterclaim.

ATTORNEY FEES ON APPEAL

The property owners claim that the City's appeal is frivolous and request payment of their attorney fees under RAP 18.9[17] and under CR 11.[18]

---

[17] That rule states in part:

The appellate court on its own initiative or on motion of a party may order a party or counsel . . . who uses these rules for the purpose of delay, files a frivolous appeal, or fails to comply with these rules to pay terms or compensatory damages to any other party who has been harmed by the delay or the failure to comply or to pay sanctions to the court.

RAP 18.9(a).

[18] That rule states:

The signature of a party or of an attorney constitutes a certificate by the party or attorney that the party or attorney has read the pleading, motion, or legal memorandum; that to the best of the party's or attorney's knowledge, information, and belief, formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion, or legal memorandum is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or legal memorandum, including a reasonable attorney fee.

CR 11(a). *See also Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 223, 829 P.2d 1099 (1992) (holding that under RAP 18.7, CR 11's certification requirement applies to proceedings in the appellate courts as well as the superior courts).

In determining whether an appeal is brought for delay, we inquire whether, when considering the record as a whole, the appeal is frivolous, i.e., whether it presents no debatable issues and is so devoid of merit that there is no reasonable possibility of reversal. *Streater v. White*, 26 Wn. App. 430, 434, 613 P.2d 187, *review denied*, 94 Wn.2d 1014 (1980). In determining whether an appeal is frivolous and was, therefore, brought for the purpose of delay, justifying the imposition of terms and compensatory damages, we are guided by the following considerations: (1) A civil appellant has a right to appeal under RAP 2.2; (2) all doubts as to whether the appeal is frivolous should be resolved in favor of the appellant; (3) the record should be considered as a whole; (4) an appeal that is affirmed simply because the arguments are rejected is not for that reason alone frivolous; (5) an appeal is frivolous if there are no debatable issues on which reasonable minds might differ, and the appeal is so totally devoid of merit that there was no reasonable possibility of reversal. *Streater*, 26 Wn. App. at 434-35.

The City's appeal presents debatable issues and is not frivolous. Thus, attorney fees and CR 11 sanctions are inappropriate.

## CONCLUSION

In its initial answer, the City admitted that its purpose in imposing the challenged user fee was to raise revenue: "Charging rates only to property owners who choose to connect to the City's Water and Sewer Systems would not generate sufficient revenue." CP at 9. Although a city may charge *users* for the services it provides, to obtain funds to provide a generalized service, it must tax. Here, there is no direct benefit or identified regulatory use of the funds collected from the property owners who are required to pay the charges. Instead, the City used the money raised by the charges to operate a free public RV dump for use by all RVs in the area and to reduce the water and sewer charges paid

620

by permanent residents of the developed land. This revenue-generating method is illegal, and landowners who paid the unauthorized availability charges are entitled to recover with interest the charges paid after April 8, 1996.

Affirmed.

ARMSTRONG, J., and SEINFELD, J. Pro Tem., concur.