# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Parentage of<br><br>O.S. & K.S.,<br><br>                Minor Children.<br><br>JENNIFER HINES,<br><br>                Respondent,<br>      v.<br><br>KENNETH STEVENS,<br><br>                Appellant. | No. 81394-3-I<br><br>DIVISION ONE<br><br>ORDER WITHDRAWING<br>OPINION AND SUBSTITUTING<br>OPINION |

The court has determined that the opinion in the above-entitled case filed on July 27, 2020 shall be withdrawn and a substitute unpublished opinion be filed. Now, therefore, it is hereby

ORDERED that the opinion filed on July 27, 2020 is withdrawn and a substitute unpublished opinion shall be filed.

FOR THE COURT:

_Mann, C.J._

_Andrus, A.C.J._

_Dwyer, J._

FILED
8/3/2020
Court of Appeals
Division I
State of Washington

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Parentage of

O.S. & K.S.,

                    Minor Children.

JENNIFER HINES,

                    Respondent,

         v.

KENNETH STEVENS,

                    Appellant.

No. 81394-3-I

DIVISION ONE

UNPUBLISHED OPINION

MANN, C.J. — Kenneth Stevens appeals a final parenting plan entered in 2019, challenging restrictions on his residential time with his two children. Because the trial court acted within its authority to impose restrictions under RCW 26.09.191 and substantial evidence supports the court's findings, we affirm.

I.

Kenneth Stevens and Jennifer Hines have two children together, K.S. and O.S.[1] Stevens and Hines ended their relationship in 2012 and Hines

---

[1] Hines has changed her last name to Sandrini. We refer to Hines by her former last name to be consistent with the record and pleadings below.

Citations and pin cites are based on the Westlaw online version of the cited material.

subsequently married Benjamin Sandrini. Since the parties separated, K.S. and O.S. have primarily lived with Hines, Sandrini, and Hines's two older children from a prior relationship, T. and Z.

Although Hines and Sandrini had a turbulent relationship, they were initially able to parent their children together without court involvement. Conflict between the parties escalated in 2013 after Hines attempted to obtain a protection order and Stevens withheld the children from Hines for a period of time. Hines obtained a court order directing Stevens to release the children to her and ordering the children to reside with her. Hines served the order on Stevens, but as Stevens admits, he initially refused to comply.

Between July and October 2013, both Hines and Stevens filed multiple proposed parenting plans. Both sought sole decision-making authority, requested that the children reside with them the majority of the time, and sought restrictions under RCW 26.09.191 as to the other parent.

On November 20, 2013, the court entered a temporary parenting plan. The plan provided for the children to reside primarily with Hines and to have residential time with Stevens from Friday to Sunday twice per month. The court ordered both parents to complete a parenting seminar. The court ordered Stevens to refrain from withholding the children at the end of his visits or accessing Hines's home, and provided for Hines's address to remain confidential.

Hines' and Stevens's contentious relationship continued after entry of the temporary parenting plan. They had numerous conflicts surrounding the

children's healthcare, education, the environments of both households, and other issues. Nearly five years after the entry of the temporary parenting plan, Stevens filed a petition to change the parenting plan. Stevens claimed that Hines and Sandrini were growing marijuana and driving while impaired.

A trial took place over the course of three days in February 2019. Although he initially retained an attorney, Stevens appeared pro se at trial. At the time of trial, K.S. and O.S. were aged 7 and 10, respectively. The court considered the testimony of Hines, Stevens, Sandrini, Hines's mother, and Hines's oldest child, as well as 25 exhibits.

At the conclusion of the hearing, the court entered final orders, including findings and conclusions and a final parenting plan. The trial court imposed restrictions on Stevens under RCW 26.09.191(2)(a), (b), and (c), concluding that he "substantially refused to perform his parenting duties," engaged in "repeated emotional abuse," and has a "history of domestic violence." The court also found that discretionary restrictions were warranted under RCW 26.09.191(3). The parenting plan gives sole decision-making authority to Hines with respect to nonemergency medical issues and education. Consistent with the temporary plan in place since 2013, the 2019 final parenting plan provides for the children to reside primarily with Hines. The court again allowed Stevens to have twice monthly overnight visits with the children, but ordered the visits to be supervised by Stevens's parents or another mutually-agreed upon party. The court did not order constant monitoring, but required the supervising parties to be available to the children at all times. The court ordered Stevens to complete two parenting

3

classes, to obtain a psychological evaluation with a parenting component, and to comply with any treatment recommendations made as a part of that evaluation. The plan provides for the possibility of expanding Stevens's residential time or lifting the supervision requirement upon his completion of these requirements. The court awarded attorney fees of approximately $8,500 to Hines. Stevens appeals.

## II.

A trial court has broad discretion in fashioning a parenting plan. In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). We review a trial court's parenting plan for an abuse of discretion. In re Marriage of Black, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017). "A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; . . . it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard." In re Marriage of Littlefield, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).

The trial court's findings of fact are verities on appeal if they are supported by substantial evidence. In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014). Evidence is "substantial" when it is sufficient to persuade a fair-minded person of the truth of the matter asserted. Black, 188 Wn.2d at 127. We do not review the trial court's credibility determinations or weigh evidence, even if we may disagree with the trial court. Black, 188 Wn.2d at 127. And we are extremely reluctant to disturb child placement decisions "[b]ecause the trial court

hears evidence firsthand and has a unique opportunity to observe the witnesses." In re Parenting & Support of C.T., 193 Wn. App. 427, 442, 378 P.3d 183 (2016).

RCW 26.09.191 governs the court's authority to impose restrictions on a parent's residential time and decision-making. The court is required to limit residential time and decision-making authority if it finds that a parent has engaged in willful abandonment or substantial refusal to perform parenting functions, abuse of a child, or a "history of acts of domestic violence." RCW 26.09.191(1), (2)(a). The court is permitted, but not required, to limit provisions of the parenting plan if it finds that certain other circumstances exist, including a parent's neglect or substantial nonperformance of parenting functions; long-term impairment which interferes with performance of parenting functions; abusive use of conflict; or withholding one parent's access to the child for a protracted period of time without good cause. See RCW 26.09.191(3)(a),(b),(e),(f).

Stevens challenges the court's imposition of restrictions on his residential time under RCW 26.09.191.[2] He primarily asserts that the court erred in weighing the evidence. He claims the court gave too much credence to some evidence—including "old unfounded allegations" of abuse and a brief bout of depression—and failed to adequately appreciate the importance of other factors—including the benefit of his involvement in his children's lives.

Stevens's argument fails chiefly because, as explained, the appellate court does not reweigh the evidence or revisit the trial court's credibility

---

[2] Stevens does not assign error to or otherwise challenge the court's order giving Hines sole decision–making authority regarding healthcare and education.

determinations.  See Black, 188 Wn.2d at 127.  In addition, Stevens's claims are premised on significant mischaracterizations of the record.  Most notably, Stevens repeatedly asserts that the court abused its discretion by failing to consider that Hines lost custody of the children and he was previously awarded "primary custody."  No evidence in the record supports these claims.  The residential schedule that has been in place since 2013 has not changed.  Since that time, Stevens has residential time with the children two weekends every month and the children otherwise reside with Hines.

The court made numerous findings to support the imposition of parental restrictions:

> 1. Based on a preponderance of the evidence that under RCW 26.09.191(1) and RCW 26.09.191(2)(a), Mr. Stevens engaged in a history of domestic violence as defined in RCW 26.50.010(3). There was credible evidence presented of physical harm, bodily injury, and the infliction of fear of imminent physical harm, bodily injury, or assault.
>
> 2. The evidence and testimony provided regarding injuries to the child [Z.] (the mother's biological child) by Mr. Stevens, was interpreted differently by the Court than how Mr. Stevens interpreted the testimony and evidence.  Specifically the Court finds that the testimony was that Mr. Stevens picked up [Z.] by the collar, not the neck, which would not necessarily inflict noticeable injuries.
>
> 3. The testimony of Taylor Hines was credible.
>
> 4. Mr. Stevens' involvement or conduct may have an adverse effect on the children's best interest, based on his neglect or substantial non-performance of parenting functions.  Specifically Mr. Stevens' lack of involvement in the children's medical appointments and effectively terminating [O.S.'s] counseling with a counselor with whom she had developed a therapeutic relationship with for no valid reason.  Additionally, the Court finds that Mr. Stevens has failed to be involved in the children's education, without a valid reason as to why.

5. Mr. Stevens has a long-term emotional or physical impairment which interferes with his performance of parental functions as defined in RCW 26.09.004. Specifically due to the fact that Mr. Stevens testified to being in a blackout state for several weeks, although the exact time frame is unclear, during which point he had no contact with the children and that he was in a mental state which resulted in a legal finding of at least two criminal cases dismissed for diminished capacity. Based on the evidence, the Court does have concern for Mr. Stevens' mental well-being.

6. Mr. Stevens has engaged in abusive use of conflict. Specifically due to the fact that he raises his voice and discusses topics in the children's presence which are inappropriate for that audience. Additionally, Mr. Stevens uses the court system and all of its trappings, including parties having to get attorneys and pay attorney fees, to solve problems that could otherwise be solved.

7. Mr. Stevens withheld from the other parent access to the children for a protracted period of time without good cause, specifically where Ms. Hines had to get a court order to get the children back.

. . . .

11. Mr. Stevens' was less credible than other witnesses, largely due to his testimony during cross examination.

Stevens does not challenge any of the court's findings. He focuses on the court's imposition of supervised visitation based on the finding of a history of acts of domestic violence under RCW 26.09.191(2)(a)(iii). But he fails to acknowledge or address the court's multiple alternative bases for imposing limitations under RCW 29.09.191 or assign error to the factual findings supporting those bases.

Even disregarding the court's alternative and unchallenged grounds for restricting Stevens's residential time, there is sufficient evidence in the record of "a history of acts of domestic violence as defined in RCW 26.50.010(3)." "Domestic violence," as defined by RCW 26.50.010(3)(a), includes "[p]hysical

harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members."

Although Stevens largely fails to discuss the evidence, he claims that the only allegations of abuse were "of the type that are on the lowest possible level of the spectrum of what would be considered domestic violence." And he maintains that, apart from allegations of yelling, there was evidence of only two minor incidents. He points to one time where he broke a door, but explains that he did so only because Hines was attempting to sabotage him by causing him to be late for work. Stevens claims on another occasion, he was forced to intervene to prevent Hines's son, Z., from assaulting two-year-old K.S. Stevens argues that as in In re Marriage of Watson, 132 Wn. App. 222, 130 P.3d 915 (2006), the court abused its discretion by imposing restrictions based on "mere unproven allegations."

But again, under the substantial evidence standard, we do not "substitute our judgment for the trial court's, weigh the evidence, or adjudge witness credibility." See In re Marriage of Wilson, 165 Wn. App. 333, 340, 267 P.3d 485 (2011). And Stevens fails to address the trial court's finding that he was "less credible," whereas the court found that the evidence of domestic violence was "credible" and that Hines's daughter, T., testified credibly.

T.'s version of the incident involving Z. contradicts Stevens's claim that he was merely protecting K.S. According to T., Stevens was angry at her brother for taking a toy away from one of the younger children. He yelled at Z. "in his face," while holding him up against the wall by his shirt collar.

8

The record includes other evidence of "assault," and several incidents that revealed an "infliction of fear of imminent physical harm, bodily injury or assault." Hines testified that there were "[m]ultiple, multiple times" when Stevens was violent or threatened her, causing her to fear for her safety or for the safety of the children. Although the statute does not include a temporal requirement for the acts of domestic violence, the record establishes that Stevens's pattern of aggressive conduct continued up until the time of trial.

For instance, Hines described an incident when she was pregnant and, because Stevens was yelling and unable to calm down, she locked him out of the house. When she opened the door to talk, he continued to yell in her face, restrained her by grabbing her hands, and pulled her outside the house, scratching her and ripping her shirt in the process. Neighbors called the police. Hines described other incidents when Stevens broke her phone after she called 911, broke through a locked door, and broke into her home when he was out of control and she tried to physically distance herself. Hines testified about a time after the couple separated, when they planned to take the children to the ocean together. Stevens was not ready when Hines arrived and he emerged from the house in a rage and tried to pull one of the children out of the car. After Hines left, Stevens called and threatened to kill her if she failed to return with the children.

Hines testified that Sandrini almost always accompanies her to exchange the children because she remains afraid of Stevens. Hines testified about recent interactions, including a telephone call with the children when they were in

9

Stevens's care. After the call was disconnected and Hines reinitiated the call, she heard Stevens yelling at the children, "[s]he hung up on you" and "[y]our mom is a liar." Hines testified that during the most recent exchange of the children, Stevens called the police while the children were in the car. Then, he put his face though her open car window and yelled menacingly at her while she was unable to drive away as the children were not secured in their seats.

The record contains substantial evidence of assault and the infliction of fear of imminent physical harm. This evidence supports the trial court's finding of a history of domestic violence. In turn, this finding supports the court's imposition of mandatory restrictions on residential time under RCW 26.09.191(2).

Without further elaboration or citation to relevant authority, Stevens argues that the court infringed on his parental rights in violation of due process by imposing RCW 26.09.191 restrictions without a showing of necessity. He also contends that the restrictions imposed are not reasonably calculated to address the identified harm because supervised visitation will not mitigate his conflict with Hines. See RCW 26.09.191(2)(m)(i) (restrictions imposed under RCW 26.09.191(2)(a) or (b) "shall be reasonably calculated to protect the child from physical, sexual, or emotional abuse or harm that could result if the child has contact with the parent"); Chandola, 180 Wn.2d at 655.

The due process clause of the Fourteenth Amendment includes a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests." Washington v. Glucksberg, 521 U.S. 702, 720, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997). The

10

United States Supreme Court has recognized that perhaps the oldest of these fundamental liberty interests is the interest of parents in the care, custody, and control of their children.  Troxel v. Granville, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000).

But a parent's rights may be subject to limitation in order to protect a child. Wisconsin v. Yoder, 406 U.S. 205, 233-34, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972).  RCW 26.09.191(2) and (3) reflects the legislature's recognition of this fact.  RCW 26.09.191 provides that a trial court may preclude a parent's residential time altogether if certain factors exist.  See In re Marriage of Underwood, 181 Wn. App. 608, 611, 326 P.3d 793 (2014).

Here, the court relied on several statutory factors under RCW 26.09.191(2) and (3) in imposing supervised visitation.  Stevens participated in the trial and was aware of the possibility that the court would impose parental restrictions.  Stevens does not argue that the trial court lacked authority to place limits on residential time, does not challenge the constitutionality of RCW 26.09.191 on its face, or question the constitutional validity of the statute as applied to him.  Stevens presents no reasoned argument to support his assertion of a violation of his constitutional rights.

Moreover, the statute does not require a specific finding with regard to the necessity of supervised contact.  Upon a finding of neglect, abuse, or a history of domestic violence under RCW 26.09.191(2), parental restrictions are mandatory and the statute expressly provides that those restrictions may include supervised contact.  RCW 26.09.191(2)(m)(i).  In this case, supervised contact

does, in fact, minimize opportunities for Stevens to engage in conflict with Hines, shelters the children from the effects of that conflict, and ensures a safe environment for the children during Stevens's residential time. The limitations are reasonably calculated to prevent harm to K.S. and O.S.[3]

Stevens next argues that the court abused its discretion by not allowing him to object to the exhibits that Hines submitted pursuant to ER 904. ER 904 provides that certain documents "shall be deemed admissible" if properly proposed as exhibits unless the opposing party objects within 14 days. ER 904(a), (c). He complains that his counsel withdrew from the case without objecting, and he did not know about the exhibits until trial. The record indicates that Hines provided the exhibits three weeks before Stevens's counsel withdrew. Stevens was not deprived of an opportunity to object. He has not designated any exhibits on appeal and does not provide the basis for objection as to any particular exhibit.

Stevens also asserts cumulative error and judicial bias. But Stevens demonstrates no error, much less cumulative error. And he cites no authority applying the cumulative error doctrine in a civil case. See DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). Stevens claims that the trial court demonstrated bias against him and urges this court to remand to a

---

[3] In his reply brief, Stevens suggests that the trial court committed reversible error by failing to expressly find that his conduct caused harm to the children. Because Stevens failed to properly brief this argument in a manner permitting Hines to respond, we need not consider it. See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) ("an issue raised and argued for the first time in a reply brief is too late to warrant consideration.").

different judge "to preserve the appearance of fairness." Because we affirm, we do not address the issue.

Finally, Hines requests attorney fees and costs under RAP 18.9 and RCW 4.84.185. RAP 18.9 authorizes an award of attorney fees if an appeal is frivolous. An appeal is frivolous where "it presents no debatable issues and is so devoid of merit that there is no reasonable possibility of reversal." Carrillo v. City of Ocean Shores, 122 Wn. App. 592, 619, 94 P.3d 961 (2004). We consider the record as a whole in determining whether an appeal is frivolous. In re Marriage of Tomsovic, 118 Wn. App. 96, 110, 74 P.3d 692 (2003). The fact that an appeal is ultimately unsuccessful is not dispositive of whether it is frivolous, and we resolve doubts in favor of the appellant. Tomsovic, 118 Wn. App. at 110.

Under these standards, we conclude that Stevens's appeal is frivolous. The record confirms that there are no debatable issues of fact or law and the appeal is so totally devoid of merit there is no reasonable possibility for reversal. Stevens primarily sought review based on arguments seeking to reweigh the evidence and ignoring the trial court's critical credibility findings. He failed to provide a "fair statement of the facts and procedure relevant to the issues presented for review," see RAP 10.3(a)(5), misleadingly represented the record, and presented his arguments in a manner that inhibited appellate review. For these reasons, subject to her compliance with RAP 18.1(d), we grant Hines's request for reasonable attorney fees.

Affirmed.

No. 81394-3-I/14

Mann, C.J.

WE CONCUR:

Andrus, A.C.J.          Dwyer, J.

14